[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 6, 2006
THOMAS K. KAHN
CLERK

No. 05-14639
Non-Argument Calendar
_____

Agency No. A95-242-125

TOMAS RAFAEL HIGGINS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(March 6, 2006)**

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Tomas Rafael Higgins, a native and citizen of Colombia, petitions for review of the Board of Immigration Appeals's ("BIA") final order affirming without opinion the Immigration Judge's ("IJ") order denying him asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231, and the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c). On appeal, Higgins argues that he established through testimony and documentary evidence that he was targeted by the National Liberation Army ("ELN") for his Liberal Party ideas. He argues that he used his position as a medical doctor "to advocate for democracy" and oppose the ELN, who, as a result, threatened his life. Higgins argues that he had a reason to fear being singled out for persecution because he: (1) was a doctor, which, according to the United States Department of Homeland Security, is a "specifically targeted and vulnerable group"; (2) was active in the Liberal Party; (3) "openly advocated against supporting terrorist organizations"; and (4) was threatened repeatedly by the ELN as a direct result of his involvement with the Liberal Party. Higgins further argues that as a result of his position as a doctor and his open advocacy for the Liberal Party and against the ELN, there was a "reasonable possibility" that he would be persecuted, and, therefore, he has shown a "well-founded fear of persecution." Higgins additionally

2

argues that he could not relocate within Colombia because the violence and corruption is too widespread. Higgins also argues that, because of his open advocacy against the ELN, he more likely than not would be persecuted if returned to Colombia. Finally, Higgins contends that the basis for the IJ's adverse credibility finding – the discrepancies and lack of knowledge regarding his cousin's kidnaping – were adequately explained and did not go to the "heart of the asylum claim."

We review the BIA's decision "except to the extent that it expressly adopts the IJ's opinion. Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (citations omitted). Here, because the BIA expressly adopted the IJ's decision as to the merits of the claims, we review the IJ's decision. "We review the IJ's factual determinations under the substantial evidence test," and "we affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Forgue v. U.S. Attorney Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation omitted). We likewise review credibility determinations under the substantial evidence test. *D-Muhumed v. U.S. Attorney Gen.*, 388 F.3d 814, 818 (11th Cir. 2004).

3

An alien is entitled to asylum if he can establish, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor; or (2) a "well-founded fear" that his political opinion or other statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); *see Al Najjar*, 257 F.3d at 1287. "An alien seeking withholding of removal . . . bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question," on account of, *inter alia*, his political opinion. *Mendoza v. U.S. Attorney Gen*., 327 F.3d 1283, 1287 (11th Cir. 2003) (citation omitted). "An alien who has not shown past persecution, though, may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground in his country." *Id*. "Where an applicant is unable to meet the well founded fear standard for asylum, he is generally precluded from qualifying for either asylum or withholding of [removal]." *Al Najjar*, 257 F.3d at 1292-93 (quotations omitted). Similarly, if an alien fails to establish his asylum eligibility, he also fails to "satisfy the standard for CAT eligibility." *Id*. at 1303.

"The trier of fact must determine credibility, and [we] may not substitute [our] judgment for that of the [IJ] with respect to credibility findings." *D-Muhumed*, 388 F.3d at 818. "[A]n adverse credibility determination alone may be

4

sufficient to support the denial of an asylum application" when there is no other evidence of persecution. *Forgue*, 401 F.3d at 1287. "Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." *Id*. "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." *Mendoza*, 327 F.3d at 1287. "If . . . the applicant produces other evidence of persecution, . . . it is not sufficient for the IJ to rely solely on an adverse credibility determination . . . ." *Forgue*, 401 F.3d at 1287.

In this case, Higgins's claim focuses on three incidents: (1) the kidnaping of his cousin by members of the ELN; (2) various telephone threats; and (3) an attack on Higgins by members of the ELN. With respect to the evidence of Higgins's cousin's kidnaping, there were numerous inconsistencies and omissions that justified the IJ's adverse credibility finding. First, Higgins failed to include this episode in his asylum application but emphasized it in his affidavit and testimony. His explanation for this omission – that he thought he should include only those threats against him – was unsatisfactory in that he claimed that it was him that the perpetrators had intended to kidnap. Furthermore, there is evidence that suggests the kidnapers did not mistakenly take Higgins's cousin instead of Higgins.

5

Additionally, Higgins did not support his claim that the ELN was involved in the kidnaping and one newspaper article about the incident stated that the general population believed that it was perpetrated by "common delinquents" and not "the guerillas." Finally, despite the fact that Higgins's cousin lives in the United States, Higgins provided no evidence corroborating the kidnaping allegations.

Higgins also claims that he received telephone threats directed against him. However, he did not include these threats in his asylum application. Even assuming the veracity of Higgins's account of these threats, we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U.S. Attorney Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (quotations omitted). Therefore, these threats alone, even if true, do not amount to persecution. *See id*. (stating that "menacing telephone calls" do not amount to persecution).

Finally, Higgins's statements regarding an alleged attack on him in the parking lot of the hospital where he worked by members of the ELN were often inconsistent. In his asylum application, Higgins stated that the attackers ran when "they heard people approaching," and that "hospital workers" came to his aid. In his affidavit, he stated that a watchman asked him to come back inside. Higgins testified that he broke away from his attackers and ran toward the watchman's

voice. The watchman's affidavit states that when he called out, the people disappeared, and he and Higgins re-entered the hospital. However, this account does not mention Higgins running to him or other "hospital workers." Further, Higgins stated in his asylum application that after the attack, he went to stay with friends and family, but in his affidavit, Higgins omitted this fact. When questioned about the omission, Higgins briefly equivocated then stated that he stayed at his home during the day but would go to his aunt's house at night when he had panic attacks.

Based on the evidence, the record does not compel the conclusion that Higgins met his burden of proving past persecution or a well-founded fear of persecution, and substantial evidence supports the BIA's determination that Higgins was not credible and failed to establish his eligibility for asylum. Because he failed to do so, he likewise failed to establish eligibility for withholding of removal and relief under CAT. *See Al Najjar*, 257 F.3d at 1292-93, 1303. Accordingly, we deny his petition for review.

**PETITION DENIED.**