[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

------------------------------------------

No. 05-10536
Non-Argument Calendar

--------------------------------------------

BIA No. A79-419-913

BIMBOLA MUFLIAT SAUBAN,
a.k.a. Shana Akuffo,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

----------------------------------------------------------------

Petition for Review of a Decision of the
Board of Immigration Appeals

----------------------------------------------------------------

**(May 18, 2006)**

Before EDMONDSON, Chief Judge, TJOFLAT and BIRCH, Circuit Judges.

PER CURIAM:

Bimbola Mufliat Sauban, a native and citizen of Nigeria, petitions this court

for review of the order by the Board of Immigration Appeals ("BIA") affirming

the Immigration Judge's denial of asylum, denial of withholding of removal, and denial of relief under the United Nations Convention Against Torture (CAT).[1] We deny her petition.

Sauban initially sought asylum based on her religion--Christian--because she feared persecution by a cult that previously had attacked her and had held her against her will. She claimed that her mother, a government worker, was killed in 1997 in an anti-government riot and that her father was killed in a religious riot in 2000. She claimed that her parents were Christian.

After her father was killed, her father's friend, Mr. Gbemsiola, took her and her brothers to another town in Nigeria, where Mrs. Ikudaisi, who knew Sauban's father, allowed Sauban and her brothers to live with her. Ikudaisi died about nine months later. After Ikudaisi died, Sauban was visited by several persons who indicated that they were members of a cult that worshiped the spirit of the wind, that Ikudaisi was a cult leader, and that she had provided Sauban's name as her replacement when she died. Sauban declined to join, but cult members later took her to a shrine, where they commenced a ritual and cut her hair, clothes, wrists,

---

[1]Sauban offers no substantive argument about the denial of CAT relief: this claim is abandoned. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (petitioner abandons issue by failing to offer argument on that issue).

2

head, chest, and back. After Sauban still refused to join, she was held captive for two weeks, but she then escaped and left the country. Sauban fears that the cult will track her down if she is returned to Nigeria and that the government will not protect her.

The IJ initially denied Sauban's asylum application, but the BIA remanded for more fact-finding. On remand, Sauban raised a new claim: that her uncle, Lukuman, would force her to undergo circumcision, or female genital mutilation (FGM), if she returned to Nigeria. Sauban presented the affidavit of her female cousin, Rukayat Oyewole, who had lived in the United States but had returned to Nigeria on vacation and feared that their family would subject both Sauban and herself to FGM.

Sauban also offered several reports about the conditions of Nigeria that showed (1) the existence of Christian-Muslim conflicts in some parts of Nigeria and (2) that FGM still occurs in parts of Nigeria. Sauban also presented articles about Nigerian cult activities and deaths resulting from clashes between cult groups. The IJ again rejected Sauban's claims, determining that she had not testified credibly and that her claims were not supported by evidence. The BIA affirmed.

Sauban argues that the IJ's adverse credibility determination was based on speculation, conjecture, and personal opinion; and she argues that she provided specific, credible, and consistent testimony about her claims of past persecution. We uphold the IJ's and the BIA's decisions.

We review the BIA's and IJ's[2] factual determinations--including the IJ's credibility determinations--under the substantial evidence test. Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Under the highly deferential substantial evidence test, we must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (citation omitted). "To reverse the [BIA's and] IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (emphasis added). And on credibility determinations, we may not substitute our judgment for that of the IJ. Forgue, 401 F.3d at 1286.

An alien may obtain asylum if she is a "refugee": a person unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of," among other things, religion or membership in a

---

[2]"We review only the [BIA's] decision, except to the extent it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case the BIA adopted the IJ's decision except for two minor details; so we primarily review the IJ's analysis as if it were the BIA's.

4

particular social group. 8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284, 1287 (11th Cir. 2001). But an adverse credibility determination alone may be sufficient to support the denial of asylum relief. See Forgue, 401 F.3d at 1287.

Substantial evidence supports the IJ's determination that Sauban did not testify credibly. Sauban testified that her mother died in 1997 and that her father died in 2000. But affidavits that Sauban presented from her aunt, Ademola, and her uncle, Lukuman, indicate that her mother died in 1999 and that her father died in 1998.[3] Also, although Sauban stated that her father died in religious riots, Lukuman indicated that he had died from illness. Further, Sauban asserted that her parents were Christian, but documentary evidence showed that they were buried according to Muslim tradition.[4]

---

[3]Sauban contends that we should discount these documents because they were provided by Lukuman, who had a motive for providing false information: he wished Sauban to return to Nigeria to undergo FGM. But, in determining whether substantial evidence supports the IJ's adverse credibility decision, we cannot ignore that these documents--which were presented on her behalf--are inconsistent with Sauban's testimony about the times and circumstances of Sauban's parents' deaths.

[4] We also note some internal inconsistencies in Sauban's testimony. While Sauban initially testified that she did not know how to contact Lukuman, instead communicating with him through the neighbor, Gbemsiola, Sauban later stated that she had spoken directly to Lukuman and that Gbemsiola had given her a phone number for Lukuman. Also, Sauban initially indicated that she did not know who her brothers were living with while she was in a United States detention center, but she later stated that they were living with a woman named Fawsat.

Substantial evidence also supports the IJ's decision to deny Sauban's claims for lack of evidence. Sauban presented information about Christian-Muslim conflict in parts of Nigeria, but the evidence was not clear that Sauban's father had died because of his religion. Sauban presented no evidence, apart from her testimony, corroborating the existence of the wind cult or that the cult members would harm or kill her because she would not join them. And although Sauban offered articles about cult-related deaths, the articles showed that these deaths resulted from clashes between rival cults.

Further, even though Sauban presented evidence that FGM still occurs in Nigeria, the evidence does not show that she would have to undergo FGM if she returned to Nigeria, especially in the light of the situation of her cousin, who had returned to Nigeria but had avoided undergoing FGM. We also note that Sauban failed to raise the FGM claim during her initial asylum proceeding.

In sum, the evidence does not compel us to reverse the IJ's and the BIA's decisions that Sauban's testimony was not credible or that she established persecution on account of Sauban's religion or membership in a particular social group.[5]

**PETITION DENIED**.

---

[5]Because Sauban has failed to establish a claim of asylum on the merits, she necessarily fails to establish eligibility for withholding of removal. See Forgue, 401 F.3d at 1288 n.4.