[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-13357
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 20, 2007
THOMAS K. KAHN
CLERK

Agency No. A96-096-383

RICARDO ADAN MIRA,
SANDRA DIAZ RUIZ,
RICARDO MIRA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 20, 2007)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Ricardo Adan Mira, for himself and on behalf of his wife, Sandra Diaz Riuz, and minor son, Ricardo Mira, petitions for review of the Board of Immigration Appeals' decision affirming the Immigration Judge's denial of his claims for asylum and withholding of removal.

Mira is a citizen of Colombia and was admitted to the United States as a non-immigrant visitor in March 1999 with authorization to remain until October 1, 2002. In removal proceedings, Mira conceded that he was subject to removal for remaining in the United States past that date, but claimed that he and his family were eligible for asylum, withholding of removal, and relief under CAT.

In his asylum application and in testimony before the IJ, Mira asserted that he started assisting the Colombian government while working as a pilot for an aviation company in Cali, Colombia from August 1996 through December 1997. In particular, Mira flew government soldiers and politicians as well as supplies and political pamphlets into various combat zones for free or for reduced rates. He also flew wounded soldiers out of these combat zones to receive medical attention.

Mira's troubles with the Armed Revolutionary Forces of Colombia (FARC) apparently began in September 1996, when Mira's wife received a threatening call from someone claiming to be a member of that organization. The caller warned that the Mira family would "never again be able to sleep in peace" unless Mira ceased collaborating with the army.

2

Five months later, in February 1997, Mira received a letter from FARC labeling him a "military target" and exhorting him to leave the country. This was the first of about ten letters and ten phone calls Mira would receive from FARC over the next year, all communicating basically the same threatening message. Still, Mira and his family remained in Colombia, with Mira taking an airplane maintenance job in the north of Colombia while his wife and son stayed at Mira's sister's home back in Cali.

Finally, on December 10, 1998, someone riding in a blue jeep shot at Mira's car as he drove to his sister's home from the Cali airport to spend Christmas with his wife and son. Although Mira was able to evade his aggressor unscathed, he received a letter two days later in which FARC claimed responsibility for the shooting incident and warned him that he was "lucky this time" but that "next time will be at another price." After this incident, Mira moved his family to the town in northern Colombia where he had been working, and eventually, on March 23, 1999, the family relocated to the United States.

In considering Mira's asylum application, the IJ first found, in conclusory fashion, that Mira had "failed to show that he is the victim of past persecution." The IJ then found that Mira had no "objectively well-founded fear" of future persecution, relying on two facts in particular: (1) Mira or his family members returned to Colombia after traveling to the United States on two separate occasions

3

after being harassed by FARC; and (2) Mira did not ultimately move his family to the United States until four months after the December 10, 1998 shooting incident near the Cali airport. These actions, in other words, were not the response "of an individual who is genuinely and credibly fearful of their life."

Since Mira was ineligible for asylum, the IJ found that he was necessarily ineligible for withholding of removal, which required him to meet the higher burden of showing that he would more likely than not face persecution if he was returned to Colombia. Likewise, the IJ found that Mira had not shown that he would face torture at the hands of the Colombian government upon his return to that country as required for CAT relief.

The BIA affirmed and adopted the IJ's decision without opinion, and Mira now seeks review of that affirmance with respect to his asylum and withholding-of-removal claims.[1]

Because the BIA adopted the IJ's decision, that is the decision we review here. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the IJ's factual determinations under the substantial evidence test, under which we will affirm the IJ's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1283–84 (citation

---

[1] Mira has not sought review of the IJ's decision to deny him relief under CAT. He has therefore abandoned that issue here. See Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

The Attorney General has discretion to grant asylum to an alien who is a "refugee" within the meaning of the Immigration and Nationality Act. See 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). As the asylum applicant, Mira bore the burden of proving refugee status, Al Najjar, 257 F.3d at 1284, and thus had to show, with specific and credible evidence, either: (1) past persecution on account of a statutorily listed factor; or (2) a "well-founded fear" that he will be persecuted in the future based on a statutorily listed if he is returned to Colombia. 8 C.F.R. § 208.13(a), (b); Silva v. United States Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). In his petition, Mira does not challenge the IJ's finding on the second prong of the analysis, that he did not have an "objectively well-founded fear" of persecution should he be returned to Colombia.

5

With respect to Mira's claim that the IJ erred on the "past persecution" prong, we note that "'persecution' requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." Gonzales v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) (citing Mikhailevitch v. INS, 146 F.3d 384, 390 (6th Cir. 1998)). This means in particular that the threatening phone calls and letters Mira and his wife began receiving in September 1996 are insufficient to establish Mira's eligibility for asylum on the basis of past persecution. See Silva, 448 F.3d at 1237–38 (finding a written death threat and numerous threatening phone calls to be "harassment and intimidation, but not persecution"); Sepulveda, 401 F.3d at 1231 ("[T]he menacing telephone calls and threats to [the petitioner] . . . do not rise to the level of past persecution that would compel reversal of the IJ's decision.").

The only other FARC encounter Mira argues amounts to past persecution is the December 10, 1998 shooting incident. As evidence of FARC's involvement in that episode, Mira attached to his asylum application a letter purportedly from FARC suggesting that, although he had escaped his assailants once, he would not be so lucky the next time. But, after considering the evidence of the shooting, the IJ deemed it

6

somewhat unlikely that the FARC guerillas considered [Mira] to be such a threat to them that they would continue to come after him despite the fact that he had apparently complied with their demands by stopping his work on behalf of the army and for not being involved with [the army] in any way for approximately 18 months.

In other words, the IJ determined that FARC could no longer be targeting Mira on account of his collaboration with the army.

We have never held that an attempted shooting like the one Mira described in his asylum application and testimony before the IJ qualifies as persecution. Cf. Silva, 448 F.3d at 1238 (assuming, "for the sake of argument," that a similar shooting amounted to persecution). But even assuming that such a shooting would amount to persecution, there is no evidence in the record compelling us to conclude that FARC orchestrated the attack on the basis of Mira's political opinion. In this regard, Mira's case is similar to Silva, where the petitioner was shot at while driving home from a restaurant she owned. 448 F.3d at 1234. In that case, we affirmed the IJ's finding that the petitioner had not suffered past persecution on account of her political activity in light of the petitioner's admission "that she did not know who shot at her car or why." Id. at 1238. Here, the letter Mira proffered is evidence of who shot at Mira's car (FARC), but leaves us with no indication as to why he was shot at. Additionally, Mira's own testimony that he ceased working with the army well over a year prior to the December 10, 1998 shooting supports

7

the IJ's conclusion that FARC did not target Mira because of his political opinion. Nothing in the record compels a conclusion to the contrary.

Because no record evidence compels a finding contrary to that of the IJ on the "past persecution" inquiry, Mira's petition is due to be denied with respect to his asylum claim. And because Mira has failed to meet his burden under the standard for asylum, it follows that he likewise cannot show that he will more likely than not face persecution upon return to Colombia, as required for withholding of removal. See Al Najjar, 257 F.3d at 1292–93 ("[w]here an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of [removal]"). Accordingly, Mira's petition must also be denied with respect to his claim for withholding of removal.

**PETITION DENIED.**