[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-16453
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 19, 2007
THOMAS K. KAHN
CLERK

BIA Nos. A97-851-788 & A97-851-789

INDERA MORTLEY,
CHRISTAL NERESSA WILLIAMS,
CHRISTOPHER CYRIL WILLIAMS,
CHARLES WESLEY WILLIAMS,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(June 19, 2007)**

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Indera Mortley, Charles Wesley Williams, and their two children (collectively "petitioners") petition for review of the final order of the Board of Immigration Appeals ("BIA"), which adopted and affirmed the Immigration Judge's ("IJ") denial of their application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition for review.

## I. BACKGROUND

Petitioners, natives and citizens of Guyana, were admitted to the United States in the summer of 2003 on nonimmigrant visas. The petitioners remained in the United States longer than permitted. Upon arriving in the United States, the petitioners filed timely applications for asylum, withholding of removal and CAT relief. Petitioners claimed that they were persecuted in Guyana based on their ethnicity and political opinion. In February 2004, the Department of Homeland Security issued notices to appear, charging the petitioners with removability under INA §§ 237(a)(1)(B) and 101(a)(15), which they conceded.[1]

Mortley is of Indian ancestry, and Williams is black. According to petitioners, they experienced problems in Guyana living together as a mixed-race

---

[1]Mortley and Williams filed separate asylum applications. Mortley's asylum application listed her two children as derivative applicants. The IJ consolidated Mortley's and Williams's proceedings.

couple and having children because of longstanding tension between Guyana's two primary ethnic groups. The ethnic divide in Guyana is also political; the two major political parties in Guyana are the PPP (formed largely by Indo-Guyanese) and the PNC (formed by Afro-Guyanese).

According to petitioners' asylum applications and hearing testimony, Williams was a successful businessman in Guyana who was a regular contributor to and supporter of the PNC. However, after Williams met Mortley, he began to give money to the PPP as well. Mortley and Williams received approximately fifteen threatening telephone calls over a seventeen-month period between February 2002 and June 2003, when they left Guyana. The anonymous callers demanded money and threatened to kill Mortley and kidnap their daughter because Williams was living with an Indian woman. The callers never identified themselves and never said they were members of the PNC. However, Mortley and Williams believed the callers were members of the PNC because they accused Williams of "turn[ing] your back on us" and "not supporting us anymore."

On one occasion, Mortley was on her way to pick up her daughter at school when her driver noticed a car following them. The car continued to follow them after they picked up the daughter, but turned on to another street when they stopped to tell the police what was happening. On another occasion, Mortley heard someone calling at their front gate one evening while her husband was out of town.

3

Mortley did not go outside because the person did not call her by name. Mortley heard gunshots and, when she eventually went outside, she discovered the dead body of a stranger in the road in front of her house. Two days later, a caller told Williams that "they" had left the dead man in front of his house and that "they" were going to get Williams's daughter.

Williams and Mortley repeatedly went to the police, but got no help. Although Williams and Mortley took the threats seriously, they never paid the money the callers demanded. Neither Williams nor Mortley ever had a face-to-face confrontation with the callers, and the callers never carried out any of their threats.

The IJ denied petitioners all relief and ordered them removed to Guyana. In his oral decision, the IJ noted inconsistencies between the hearing testimony and earlier asylum interviews of Mortley and Williams, suggesting that these inconsistencies "hurt their credibility." However, the IJ concluded that, even assuming the credibility of Mortley and Williams, petitioners still failed to demonstrate past persecution.[2] The IJ concluded that Mortley and Williams "were being subject[ed] to extortion" and that there was "no indication that the persecutors here [were] motivated by race, or by ethnicity." The IJ further

---

[2]Because the IJ did not make a clean credibility determination, we assume for purposes of this petition for review that the IJ's credibility finding was not dispositive. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).

4

concluded that petitioners failed to show a well-founded fear of future persecution if they returned to Guyana or that they were eligible for CAT relief.

Petitioners appealed to the BIA, which adopted and affirmed the IJ's decision. The BIA concluded that the IJ's adverse credibility finding was not clearly erroneous, that extortionate threats did not constitute persecution and that, at any rate, "any harm suffered does not rise to the level of persecution." This petition for review followed.

## II. DISCUSSION

Petitioners argue that the BIA and IJ erred in finding that they are statutorily ineligible for asylum.[3] Specifically, Petitioners contend that they established past persecution based on their ethnicity and imputed political opinion.[4]

An alien is entitled to asylum if he or she can establish, with specific and

---

[3]When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, because the BIA expressly adopted the IJ's decision in addition to making findings of its own, we review both the IJ's decision and the BIA's findings. See id.

"A factual determination by the BIA that an alien is statutorily ineligible for asylum or withholding is reviewed under the substantial evidence test." Id. at 1283. Under this test, we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1284 (quotation marks omitted). The substantial evidence test is "highly deferential," id., and to "reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

[4]Petitioners argue only that they are eligible for asylum based on past persecution. They do not challenge the findings that they are ineligible for asylum based on a well-founded fear of future persecution and that they are ineligible for withholding of removal and CAT relief. Therefore, we do not address these claims further. See Mendoza, 327 F.3d at 1286 n.3.

credible evidence, that he or she suffered past persecution on account of his or her race, political opinion, or other statutorily listed factor. See 8 C.F.R. § 208.13(a)-(b); Al Najjar v. Ashcroft, 257 F.3d 1262, 1287 (11th Cir. 2001). Although the INA does not expressly define the term "persecution," we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotation marks omitted). We have held that menacing telephone calls and threats do not rise to the level of persecution. See id.

Here, Williams and Mortley testified that they were persecuted because: (1) they received approximately fifteen telephone calls in which anonymous callers demanded money and threatened to kidnap their daughter and kill Mortley; (2) someone followed Mortley's car while she was picking up her daughter from school; and (3) an unknown man was killed outside their house and afterward a caller who claimed responsibility threatened Williams and his daughter. The threatening phone calls and acts of intimidation to which petitioners were subjected do not rise to the level of persecution. See id. Accordingly, the BIA's denial of asylum is supported by substantial evidence.[5]

**PETITION DENIED.**

---

[5]Because substantial evidence supports this basis for denying petitioners asylum, we do not address the petitioners' remaining argument that the IJ erred in finding that they failed to show a nexus between the alleged persecution and their ethnicity or political opinion.

6