[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 31, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13750
Non-Argument Calendar

_____

BIA No. A98-116-326

YUEXIAN LIU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 31, 2008)

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Yuexian Liu, a native and citizen of the People's Republic of China, through counsel, seeks review of the Board of Immigration Appeal's ("BIA") decision affirming without opinion the Immigration Judge's ("IJ") denial of her application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Liu, a native and citizen of the People's Republic of China, argues that the IJ misconstrued the grounds of her claim for relief. On appeal, Liu argues that her claim was not that she was or would be persecuted for practicing Catholicism at an unregistered church, as the IJ contended, but that she was or would be persecuted because she refused to enter into a "state-decreed" marriage with a non-Catholic whom she did not love. Liu likewise argues that the issue that the IJ should have considered was whether young women in rural China who resist forced marriages for religious reasons comprise a "particular social group" for asylum purposes. Liu states that the IJ's credibility findings were immaterial because he made them in reference to the wrong claim. For the reasons discussed more fully below, we hold that we lack jurisdiction over this claim because Liu failed to present it to the IJ or BIA. Accordingly, we dismiss Liu's petition in part and deny it in part.

## I.

In her application for asylum, withholding of removal, and CAT relief, Liu

2

alleged that she was persecuted and tortured on account of her religion and political opinion.  Specifically,  Liu claimed that, while living in China, she became a Catholic and joined a church that was not registered with the Chinese government.  She actively participated in her church's secret services.  She also proselytized at her high school.  In December 2001, school officials "interrogated" her on her efforts to spread Catholicism at school.  They forced her to "stand in the piercing wind as punishment" and sign a letter promising to cease proselytizing and participating at her church.  They also made her choose between dropping out or being expelled, and she chose the former.

In 2003, while she and others were celebrating Easter mass at her church, "village cadres" interrupted and dispersed the meeting.  They detained Liu for questioning on the whereabouts of the church's priest.  Liu refused to cooperate and suffered "mistreatment and abuse."  Eventually, Liu told the cadres that she had not attended mass previously and only attended the Easter service out of curiosity.  The cadres released her, but warned that she would be "harshly punish[ed]" if they discovered continued participation.

In July 2003, the village head's son asked Liu to marry him.  She refused because she was not fond of him and he was much older than she.  Insulted by her refusal, the village head's son had someone secretly follow Liu.  In this way, the cadres learned that Liu continued to attend meetings at her church.  They went to

3

her family's home to arrest her, but she was not there. A family member warned her not to return, and she went to stay with a relative. The cadres continued to look for her at her family's home and threatened harm to her family if they did not turn her in and "merciless[]" punishment to Liu once captured. Not wishing to hide forever, Liu traveled to the United States.

At her asylum hearing, Liu reiterated this account. She also further explained that, when the village head's son proposed, she refused because he was "against the Catholic religion," was older than she, was a drunkard, and gambled and slept with prostitutes. Because of her refusal, the village head had her followed. Not knowing that she was being followed, she continued to attend her church's secret meetings. After the village head reported her religious activity, the cadres attempted to arrest her.

After considering this, and other, evidence, the IJ concluded that Liu had not provided credible evidence that she was or would be persecuted for practicing Catholicism, such that she had not satisfied her burden of proof for asylum, withholding of removal, or CAT relief. Specifically, the IJ reasoned in part that Liu failed to provide detail about her purported persecution or torture at the hands of the cadres, and her demeanor, when stating that she had been persecuted and tortured, was devoid of emotion. The IJ also reasoned that Liu did not establish that she had religious reasons for refusing to marry the village head's son, such that

4

any harm that followed her refusal was not related to this protected ground.

In her appeal to the BIA, Liu argued that the IJ erred in finding that her testimony was incredible. Liu argued that, while it was true that she provided little detail about her persecution and torture at the hands of the cadres, her alleged lack of emotion could have been a "cultural reaction" that said nothing of her believability. Liu also argued that she clearly stated that one of the reasons she did not want to marry the village head's son was that he was anti-Catholic.

## II.

When the BIA affirms without opinion the IJ's decision, as here, we review the IJ's decision. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). We review the IJ's legal determinations de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). We will not, however, disturb the IJ's factual determinations so long as they are supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (describing the highly deferential "substantial evidence test").

An alien who arrives in or is present in the United States may apply for, inter alia, asylum, withholding of removal, and CAT relief. INA §§ 208(a)(1), 241, 8 U.S.C. §§ 1158(a)(1), 1231(b)(3)(A), 8 C.F.R. § 208.16(c). To qualify for asylum, the alien must prove that she is a refugee. Al Najjar, 257 F.3d at 1284 (citing 8

5

U.S.C. § 1101(a)(42)(A)).  To establish refugee status, the alien must establish, through specific, detailed facts, (1) her past persecution on account of a protected ground, or (2) her "well-founded fear" that she will be persecuted in the future because of a protected ground.  8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287.

To qualify for withholding of removal, the alien must show that it is more likely than not that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion.  Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)).  To prove CAT relief eligibility, the alien must prove that it is more likely than not that he would be tortured if he returned to his country.  Al Najjar, 257 F.3d at 1303.

We lack jurisdiction, however, to consider such claims that have not been presented first to the IJ and BIA, as an alien must exhaust the administrative remedies available to him prior to obtaining judicial review.  Melian v. INS, 987 F.2d 1521, 1526 (11th Cir.1993).  Likewise, [w]hen an appellant fails to offer argument on an issue, that issue is abandoned."  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

### III.

Here, we note that Liu has abandoned any argument on the merits of the IJ's decision.   See Sepulveda, 401 F.3d at 1228 n.2.  In her appellate briefs, Liu did

6

not address the IJ's treatment of the religious persecution claim. Rather, she only argued that the IJ misconstrued her arguments and that she did not make this religious persecution claim. Likewise, Liu did not challenge the IJ's credibility findings. Rather, she stated only that the credibility findings were immaterial. Accordingly, because Liu did not offer argument on these issues, they do not merit relief. See Sepulveda, 401 F.3d at 1228 n.2.

With regard to the claim that Liu argues she actually made, we do not have jurisdiction. See Melian, 987 F.2d at 1526. Liu did not argue before the IJ or BIA that she was persecuted on account of her membership in a particular social group comprised of Chinese women who resist forced marriages for religious reasons. In her application, Liu did not check that she was applying for relief on social-group grounds. Also, while Liu discussed her refusal to marry the village head's son in her application, she did so to explain how the cadres learned that she was participating in her church's secret services. Furthermore, she did not suggest that she refused the marriage proposal for religious reasons.

Likewise, at her individual hearing, Liu primarily discussed being persecuted because of her Catholicism. While she discussed her refusal to marry the village head's son, she again did so as a means of explaining how the cadres learned of her attendance at her church's secret meetings. Although she stated this time that she refused the proposal because the village head's son was "against the

7

Catholic religion," she did not allege that the cadres knew this to be one of her reasons and allegedly persecuted her for it.

Furthermore, while Liu repeated in her brief on appeal to the BIA that she refused to marry the village head's son in part because he was anti-Catholic, she did not raise a social-group claim or explain that her claim was something other than that she was persecuted because of her Catholicism. Accordingly, because Liu never framed her claim in terms of social-group inclusion or being persecuted for refusing a forced marriage on religious grounds, rather than for participating in unsanctioned Catholic services, she did not exhaust her appellate claim before the IJ and BIA, such that we must dismiss the claim. See Melian, 987 F.2d at 1526.

Finally, Liu has abandoned her CAT relief claim. See Sepulveda, 401 F.3d at 1228 n.2. On appeal, Liu does not address her CAT relief claim or argue that she was or would be tortured, either for practicing Catholicism in an unsanctioned church or resisting a forced marriage. Accordingly, because she fails to offer argument on this issue, it does not merit relief. See Sepulveda, 401 F.3d at 1228 n.2.

In light of the foregoing, Liu's petition is **DISMISSED** in part and **DENIED** in part.