[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13585
Non-Argument Calendar

_____

BIA No. A95-914-314

FNU SUWARJO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(April 21, 2008)**

Before BLACK, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

FNU Suwarjo petitions for review of the Board of Immigration Appeals'

(BIA's) decision to affirm the Immigration Judge's (IJ's) order of removal and

denial of Suwarjo's claims for asylum and withholding of removal under the

Immigration and Nationality Act (INA), and relief under the United Nations

Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading

Treatment or Punishment (CAT).[1]  8 U.S.C. §§ 1158, 1231(b)(3), 8 C.F.R.

§ 208.16.  Suwarjo contends: (1) we have jurisdiction to review the IJ's finding

that Suwarjo's asylum application was untimely and did not qualify for an

exception to the timeliness requirement because the BIA and IJ violated Suwarjo's

right to due process, and (2) substantial evidence does not support the IJ's finding

that Suwarjo failed to establish eligibility for withholding of removal.  After

review, we deny Suwarjo's petition.

## I.  DISCUSSION

When the BIA issues a decision, we review only that decision, except to the

extent the BIA expressly adopts the IJ's decision.  *Al Najjar v. Ashcroft*, 257 F.3d

1262, 1284 (11th Cir. 2001).  To the extent the Board adopts the IJ's reasoning, we

review the IJ's decision as well.  *Id.*  Here, because the Board followed the

reasoning of the IJ with comment, we review both the IJ's and BIA's decisions.

---

[1] Although the IJ and the BIA denied relief under the CAT, Suwarjo did not raise the issue in his petition.  Thus, he abandoned that claim.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

*A. Timeliness*

"We review questions of subject-matter jurisdiction *de novo*." *Brooks v. Ashcroft*, 283 F.3d 1268, 1272 (11th Cir. 2002). Pursuant to 8 U.S.C. § 1158(a)(3), "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of an asylum application. In order to apply for asylum, an alien must "demonstrate[ ] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). An untimely application may be permitted, however, if the alien "demonstrates . . . either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D).

The REAL ID Act of 2005 added a new provision instructing that "[n]othing in . . . any other provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law" raised in a petition for review. 8 U.S.C. § 1252(a)(2)(D). We held, however, the changes implemented by the REAL ID Act did not alter the effect of § 1158(a)(3) as it relates to our jurisdiction to review the timeliness of an asylum application, and we were without jurisdiction to review "whether an alien complied with the one-year time limit or established . . . circumstances that would

3

excuse his untimely filing." *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir.2005) (quotation omitted).

The BIA and the IJ both explained why Suwarjo did not qualify for the changed-circumstances exception to the one-year filing requirement, and thus there was no due process violation. Whether circumstances in Indonesia have changed is an inquiry this Court lacks jurisdiction to review. *See id.* Accordingly, we dismiss the petition as to Suwarjo's asylum claim for lack of subject matter jurisdiction.

## B. *Withholding of Removal*

When evaluating a petition to review a decision by the BIA to deny an application for withholding of removal, we review findings of fact under the "substantial evidence test," and must affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation omitted). We review the record evidence in the light most favorable to the agency's decision and may not overturn findings of fact unless the record compels it. *Id.* at 1286-87.

An alien seeking withholding of removal under the INA must show his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

4

8 U.S.C. § 1231(b)(3)(A). To do so, he must demonstrate "he more-likely-than-not would be persecuted or tortured upon his return to the country in question." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003). In addition, there must be a nexus between the persecution and the protected activity, *i.e.*, the persecution must because of the victim's protected characteristic. *See Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (discussing "nexus" in the context of an asylum claim).

Once an alien establishes past persecution in his country based on a protected ground,

> it is presumed that his life or freedom would be threatened upon his return to his country unless the INS [or DHS] shows by a preponderance of the evidence that, among other things, (1) the country's conditions have changed such that the applicant's life or freedom would no longer be threatened upon his removal; or (2) that the alien could avoid a future threat to his life or freedom by relocating to another part of the country of removal, and it would be reasonable to expect him to do so.

*Mendoza*, 327 F.3d at 1287. "An alien who has not shown past persecution, though, may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground in his country." *Id.*

The applicant must present "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of [a statutory factor]." *Al Najjar*, 257 F.3d at 1287 (considering asylum claim) (quotations

5

omitted). An applicant may also sustain his burden of proof without showing that he would be singled out for persecution in his home country if:

> (i) The applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and

> (ii) The applicant establishes his or her own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return to that country.

8 C.F.R. § 208.16(b)(2) (withholding of removal). Furthermore, while the INA does not define persecution, this Court recognizes "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotations omitted).

Substantial evidence supports the BIA's and IJ's decision that Suwarjo was not entitled to withholding of removal under the INA. First, the record supports the conclusion that Suwarjo failed to demonstrate he suffered past persecution. Suwarjo did not show a nexus between the robbery and assaults and his ethnicity because they appear to be common criminal acts based upon his vulnerability, not his ethnicity. Even assuming Suwarjo was able to establish a sufficient nexus between the robberies and assaults and his ethnicity, the record does not compel a conclusion the robberies and assaults were extreme acts amounting to persecution.

6

Suwarjo also testified he was afraid and unable to return home during the 1998 riots, and he had to obtain government documents stating he was of Chinese descent. While unpleasant, the discrimination and harassment of which Suwarjo complains was not extreme mistreatment. *See Sepulveda*, 401 F.3d at 1231.

As Suwarjo has not established past persecution, he is not entitled to a presumption of a well-founded fear of persecution. As suggested above, the incidents on which Suwarjo relies to sustain his burden of proof do not compel the conclusion he more likely than not will be persecuted if he returns to Indonesia. Additionally, Suwarjo's parents and siblings continue to live in Indonesia, and beyond the single incident concerning his sister in 1998, the record does not contain any evidence that his family suffered harm in that country. The fact Suwarjo's family has lived unharmed in Indonesia for several years undermines his claim there is a pattern and practice of persecuting similarly situated individuals in Indonesia. *See Ruiz v. U.S. Att'y. Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006) (concluding an alien did not establish a well-founded fear where, among other things, his family continued to live in Colombia without incident). Further, although various news articles support Suwarjo's testimony regarding the violence and prejudice against ethnic Chinese in Indonesia, the 2005 Country Report indicates instances of discrimination and racially motivated harassment against ethnic Chinese Indonesians declined compared with previous years, which suggests

the government is not unwilling or unable to protect Suwarjo. *See id.* (stating the IJ may "rely heavily" upon State Department country reports). In addition, the assertion the Indonesian government is considering to institute economic policies that disfavor ethnic Chinese does not amount to an extreme act that could be considered persecution. *See Sepulveda*, 401 F.3d at 1231.

The record does not compel us to conclude Suwarjo suffered past persecution or that it is more likely than not he will suffer persecution if returned to Indonesia. Accordingly, we deny Suwarjo's petition as to his claim for withholding of removal because substantial evidence supports the findings of the BIA and the IJ.

## II. CONCLUSION

We lack jurisdiction to review whether Suwarjo was eligible to apply for asylum. Additionally, substantial evidence supports the IJ's and BIA's conclusion that Suwarjo did not qualify for withholding of removal.

**PETITION DISMISSED IN PART, DENIED IN PART.**