[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13631
Non-Argument Calendar

_____

BIA No. A75-864-921

WILMER ARTEAGA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 19, 2008)**

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Wilmer Arteaga, a native and citizen of Venezuela, appeals the order of the Board of Immigration Appeals ("BIA") affirming without opinion the immigration judge's ("IJ's") order of removal, denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and denial of relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), INA §§ 208, 241, 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c).

Arteaga argues that the BIA erred in finding that he had not established past persecution or a well-founded fear of future persecution on account of his imputed political opinion. Arteaga also argues, for the first time on appeal, that he established past-persecution or a well-founded fear of future persecution on account of his membership in a particular social group. Arteaga fails, however, to provide any argument on the BIA's denial of CAT relief. For the reasons discussed below, we deny the petition as to Arteaga's asylum and withholding-of-removal claims, to the extent they are based on his imputed political opinion; deny the petition as to Arteaga's CAT claim; and dismiss the petition as to Arteaga's asylum and withholding-of-removal claims based on his membership in a particular social group.

# I.

In his application for asylum, withholding of removal, and CAT relief and at his individual hearing, Arteaga alleged the following. His father was a member of the Democratic Action Party of Venezuela, which opposed Hugo Chavez's presidency. As part of his political opposition, his father participated in an anti-Chavez march on April 11, 2002, in Caracas, Venezuela. His father also signed a presidential recall referendum against Chavez in August 2004. Arteaga also opposes Chavez.

As a result of his father's political activity, Arteaga's family suffered the following persecution. While his father marched against Chavez, his father was "struck and threatened." After the march, his father received "late-night telephone calls" at home. One of the callers threatened his father's life and told his father that he or she "knew the whereabouts of a member of his family who lived in the [United] [S]tates." These "constant" threatening telephone calls continued from December 2002 until February 2003. Arteaga's father also received calls in February 2004, warning him to be careful because he was being watched. While most of the callers were anonymous, others identified themselves as being members of the pro-Chavez "Movement of the Fifth Republic."

After his father signed the referendum, his father was "blacklisted" and made unemployable, and Arteaga's family was constantly surveilled by Chavez's

party. Because of the stress of the phone calls and other events, his father suffered a neuromuscular paralysis in October 2002. The illness left his father incapacitated for four months and his father continued to suffer to a lesser degree until the time of Arteaga's hearing. In February 2004, his father was "taken at gunpoint in a pickup truck," told that he should cease his opposition activity or Arteaga's family would suffer "serious consequences," and "stripped of his possessions[] and the money that he was about to deposit in the bank."

Moreover, the persecution was not limited to Arteaga's father and his immediate family. In 2005, the home of one of Arteaga's cousins was broken into. While the police said that it was a "regular robbery," Arteaga's cousin and family knew that it was Chavez supporters

Arteaga admitted, however, that his father no longer is as active in the Democratic Action Party because of health problems and that no other family member currently participated. Arteaga also admitted that, at the time of the hearing, his daughter, mother, father, brother, and sister remained in Caracas, Venezuela.

The IJ denied Arteaga's request for relief. The IJ found that Arteaga had not demonstrated past persecution. The IJ reasoned that Arteaga "was never in Venezuela during the time of Hugo Chavez" and thus never was "affected, bothered, jailed, or put at risk at all in Venezuela." Regarding Arteaga's father, the

4

IJ reasoned that the phone calls to Arteaga's father constituted mere harassment and that Arteaga had not provided any evidence corroborating his testimony that his father was injured, such as medical records, or that his cousin's home was broken into, such as police reports. The IJ also found that Arteaga had not demonstrated that he had a reasonable fear of being persecuted if he returned to Venezuela. The IJ reasoned that the record provided no indication that Arteaga's mother, brother, or sister ever were harmed even though they remained in Caracas, Venezuela. On appeal, the BIA affirmed and adopted the IJ's opinion.

## II.

When the BIA affirms without opinion the IJ's decision, as here, the IJ's decision becomes the final agency determination subject to review. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). To the extent that the IJ's decision was based on a legal determination, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). We review the IJ's factual determinations, however, under the substantial evidence test. Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001). Under this test, which is "highly deferential," we "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quotation omitted). In order to reverse a finding of fact, "we must

find that the record not only supports reversal, but compels it." Mendoza, 327 F.3d at 1287.

In conducting our review, we will not consider arguments presented before the IJ or BIA but not discussed on appeal. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned"). Also, we lack jurisdiction to consider arguments raised for the first time on appeal. Al Najjar, 257 F.3d at 1294 (explaining that "a court lacks jurisdiction to consider a claim which has not first been presented to the Board, as an alien must exhaust the administrative remedies available to him prior to obtaining judicial review").

An alien who arrives in or is present in the United States may apply for, inter alia, asylum and withholding of removal. INA §§ 208(a)(1), 241, 8 U.S.C. §§ 1158(a)(1), 1231(b)(3)(A), 8 C.F.R. § 208.16(c). To qualify for asylum, the alien must prove that he is a refugee. Al Najjar, 257 F.3d at 1284 (citing 8 U.S.C. § 1101(a)(42)(A)). A refugee is defined in the INA as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). To establish refugee status, the alien must establish, through specific, detailed facts, (1) his past persecution on account of a protected ground, or (2) his "well-founded fear" that he will be persecuted in the future because of a protected ground. 8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287.

A well-founded fear of future persecution may be established by showing (1) past persecution that creates a rebuttable presumption of a well-founded fear of future persecution based on a protected ground, (2) a reasonable possibility of personal persecution based on a protected ground, or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which the alien is a part. 8 C.F.R § 208.13(b)(1), (b)(2)(i) and (iii). In establishing the possibility of personal persecution, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1009 (11th Cir. 2005) (quotation omitted). We have suggested that an alien's allegations of a future threat are less persuasive if the alien's family remains in his country without incident. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006).

In establishing a pattern or practice of persecution, the alien need not prove that he would be singled out for persecution if he demonstrates (1) a pattern or practice of persecution of similarly situated individuals and (2) that his inclusion in

7

that group of individuals makes his fear of persecution reasonable. See 8 C.F.R. § 208.13(b)(2)(iii). In establishing any of the above, we have held that the alien must demonstrate that his fear "is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.

While the INA does not expressly define "persecution,"we have recognized that it is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that [m]ere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted) (concluding that "menacing" telephone calls and threats to the alien and her brother did not constitute past persecution). Indeed, in Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008), we held that a "minor beating" does not constitute persecution. We also have recognized that evidence that "merely shows that a person has been the victim of criminal activity[ ] does not constitute evidence of persecution based on a statutorily protected ground." Ruiz, 440 F.3d at 1258.

To qualify for withholding of removal, the alien similarly must show that it is more likely than not that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Mendoza, 327 F.3d at 1287 (citing 8 U.S.C. § 1231(b)(3)(A)). We have explained that, because the more-likely-than-not standard that applies to

8

withholding of removal claims is more stringent than the well-founded-fear standard that applies to asylum claims, ineligibility for asylum generally precludes withholding of removal eligibility. Al Najjar, 257 F.3d at 1292-93.

**III.**

Regarding Arteaga's imputed-political-opinion asylum claim, we hold that substantial evidence supports the IJ's finding that Arteaga did not establish that he suffered past persecution or had a well-founded fear of suffering future persecution. See Al Najjar, 257 F.3d at 1283-84. As to past persecution, Arteaga offered no evidence that he personally suffered any treatment resembling persecution. Also, although we recognize that we have not clarified whether the treatment of Arteaga's family by itself is relevant to whether Arteaga demonstrated past persecution for asylum purposes, we find that we need not resolve this issue here because the treatment of Arteaga's father and cousin did not rise to the level of persecution. Specifically, the threatening telephone calls that Arteaga's father received, though "constant," constitute mere verbal harassment. See Sepulveda, 401 F.3d at 1231. Also, without any evidence beyond what Arteaga offered, the record does not compel a finding that the beating that Arteaga's father allegedly received at the anti-Chavez march was something more than "minor." See Djonda, 514 F.3d at 1174; Mendoza, 327 F.3d at 1287. Likewise, the police determined that the break-in of Arteaga's cousin's house simply was "regular" criminal

9

activity, and Arteaga did not offer any evidence compelling a finding that his cousin's house was broken into by Chavez supporters because of his cousin's political opinions. See Ruiz, 440 F.3d 1258; Mendoza, 327 F.3d at 1287. Thus, Arteaga did not establish that he suffered past persecution.

As to a well-founded fear of future persecution, Arteaga is not entitled to the rebuttable presumption of this fear based on a showing of past persecution, for the reasons discussed above. See 8 C.F.R. § 208.13(b)(1). The record also does not include the necessary facts suggesting that Arteaga likely will be singled out for political persecution. See 8 C.F.R. § 208.13(b)(2)(i); Huang, 429 F.3d at 1009. Specifically, Arteaga testified that his father no longer participates with the Democratic Action Party, such that it is possible the Chavez supporters in question no longer are interested in Arteaga's father, much less Arteaga. Also, Arteaga did not testify that he ever participated in opposition politics like his father. Likewise, while Arteaga testified that he does oppose Chavez like his father, he offered nothing to suggest that Chavez's supporters know of this political belief. See Elias-Zacarias, 502 U.S. at 482-83, 112 S.Ct. at 816. Thus, it is very possible that the Chavez supporters in question never were interested in Arteaga. Furthermore, while Arteaga's mother, brother, and sister live in Caracas, Venezuela, Arteaga did not testify that they ever have been harmed by the Chavez supporters, such that it is

possible that the Chavez supporters in question did not have interest in anyone beyond Arteaga's father. See Ruiz, 440 F.3d at 1259.

The record further does not include the necessary facts that Arteaga is a member of a group that Chavez's supporters have a pattern and practice of persecuting. See 8 C.F.R § 208.13(b)(2)(iii). Even assuming that Chavez's supporters have a pattern and practice of persecuting the opposition, Arteaga did not establish that he is a member of the opposition that Chavez's supporters persecute. See 8 C.F.R § 208.13(b)(2)(iii). As stated above, Arteaga did not testify that he ever attended opposition meetings or that the Chavez supporters knew of his political beliefs. Thus, Arteaga did not establish that he has a well-founded fear of future persecution.

Regarding Arteaga's imputed-political-opinion withholding-of-removal claim, we hold that substantial evidence also supports the IJ's finding that Arteaga did not qualify for this form of relief. See Al Najjar, 257 F.3d at 1283-84. Because Arteaga did not establish that he had a well-founded fear of future persecution, as stated above, he cannot establish that it is more likely than not that he will be persecuted if returned to Venezuela. See id. at 1292-93. Accordingly, we deny the petition as to Arteaga's claim that he merited asylum or withholding of removal on account of his imputed political opinion.

11

Regarding Arteaga's social-group asylum and withholding-of-removal claims, we hold that we lack jurisdiction to consider this request for relief. See Al Najjar, 257 F.3d at 1294. Arteaga did not raise this argument before the IJ or BIA. Accordingly, we dismiss the petition as to Arteaga's claim that he merited asylum or withholding of removal on account of his membership in a particular social group.

Regarding Arteaga's CAT-relief request, we hold that Arteaga abandoned any argument that the IJ erred in denying his application as to this form of relief. See Sepulveda, 401 F.3d at 1228 n.2. Arteaga failed to provide any argument on this matter in his brief on appeal. See id. Accordingly, we affirm the IJ's denial of CAT relief.

**PETITION DENIED IN PART, DISMISSED IN PART.**