[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 16, 2003
THOMAS K. KAHN
CLERK

No. 02-13235
Non-Argument Calendar

BIA Docket No. A76-410-836

SERGIO LEONEL MENDOZA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,
IMMIGRATION AND NATURALIZATION
SERVICE,

Respondents.

Petition for Review of a Final Order of
the Board of Immigration Appeals

**(April 16, 2003)**

Before ANDERSON, BLACK and HULL, Circuit Judges:

HULL, Circuit Judge:

Sergio Leonel Mendoza, through counsel, petitions this Court for review of the immigration judge's ("IJ's") order denying him asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").[1]  We affirm.

## I.  BACKGROUND

In 1994, Mendoza, a native and citizen of Guatemala, entered the United States without inspection.  In 1998, the INS issued Mendoza a notice to appear charging him with removability under the INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled.[2]  Mendoza does not challenge his removability.

## A.    Application for Asylum and Withholding of Removal

On August 24, 1998, Mendoza filed a pro se Form I-589 application for asylum and withholding of removal.  In that application, he stated that Guatemalan

---

[1]When the Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision without an opinion, the IJ's decision became the agency's final removal order.  See 8 C.F.R. § 3.1(a)(7) (2002).

[2]Because Mendoza's removal proceedings commenced after April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), this case is governed by the permanent provisions of the Immigration and Nationality Act ("INA"), as amended by IIRIRA.  See Balogun v. U. S. Attorney Gen., 304 F.3d 1303, 1309 (11th Cir. 2002); Brooks v. Ashcroft, 283 F.3d 1268, 1271-72 n.4 (11th Cir. 2002); Oguejiofor v. U.S. Attorney Gen., 277 F.3d 1305, 1308 (11th Cir. 2002).

guerillas were persecuting his family because his father, Cruz Mendoza Lopez ("Lopez"), had been in the Guatemalan military service. After Mendoza obtained counsel, he submitted these items to support his application: (1) a translated certificate of service showing that Lopez had served in the Guatemalan military from September 1963 to August 1965; (2) a translated letter from the Guerilla Army of the Poor ("EGP"), a Guatemalan guerilla organization, to Mendoza's parents, attempting to extort money from them and threatening to kill one of their family members; and (3) a translated letter attesting that Lopez had presented to the Guatemalan military authorities a threat letter he had received from the EGP. To rebut Mendoza's application, the INS submitted a copy of the State Department's 1997 Profile of Asylum Claims and Country Conditions for Guatemala.

## B.    Hearings

At an initial hearing before the IJ, Mendoza conceded his removability. The IJ scheduled a separate hearing to ascertain whether extraordinary circumstances justified Mendoza's untimely filing of his asylum claim, and whether he was entitled to withholding of removal. At that separate hearing, the IJ concluded that Mendoza had not shown that extraordinary circumstances justified his untimely filing for asylum. Accordingly, the IJ limited the scope of the remainder of the hearing to Mendoza's eligibility for withholding of removal under the INA and the

CAT.

Mendoza then testified to these facts. He left Guatemala after (1) Lopez received anonymous letters, purportedly from guerillas, threatening to kill him and his family members if he did not cooperate with them; and (2) Lopez showed him one of these notes and advised him to leave. Mendoza believed the guerillas targeted Lopez because he had served in the military in 1965, and, as of 1994, aspired to be a military commissioner. Lopez's house was burned down in 1993. Sometime thereafter, Mendoza's uncle was killed. Mendoza cannot identify who killed his uncle, but believes it was the guerillas because of anonymous letters (that are not included in the administrative record) sent after his killing. He surmised that the guerillas mistook his uncle for Lopez (his father) based on their physical similarities.

On cross-examination, Mendoza stated that Lopez has relocated a few times in Guatemala and still lives in Aquataccan, Guatemala, the same place that Mendoza had resided, and that no harm has befallen Lopez. Mendoza testified that he was unaware that the guerilla organizations have been disbanded since the civil war in Guatemala ended in 1996; nonetheless, he still fears returning to Guatemala because former guerillas remain there.

**C.   IJ's Order**

On January 10, 2000, the IJ entered an eight-page order denying Mendoza's

application for withholding of removal. The IJ made detailed findings of fact and conclusions of law. For example, the IJ deemed Mendoza's testimony conclusory as it failed to demonstrate who burned Lopez's house and murdered Mendoza's uncle. The IJ noted that, according to the State Department's 1997 Profile of Asylum Claims and Country Conditions, the Guatemalan government and guerillas signed peace accords in 1996, and that Guatemala is facing significant political, social, and economic reform. The IJ found that Mendoza failed to establish a countrywide fear of persecution because Lopez relocated in Guatemala and resides in Aquataccan, the same area in which Mendoza lived. As such, there was no reason Mendoza would not be able to reside in Aquataccan or other areas of Guatemala free of threats.

The IJ also noted that Mendoza failed to rebut the evidence of changed country conditions contained in the State Department's 1997 report. The IJ concluded that Mendoza did not show he more-likely-than-not would be persecuted on a protected ground. Finally, the IJ found Mendoza ineligible for CAT relief because Mendoza failed to show that the present Guatemalan government would more-likely-than-not torture him or acquiesce in his torture by other individuals.[3] Accordingly, the IJ ordered Mendoza removed to Guatemala.

---

[3]In his brief on appeal, Mendoza does not challenge the IJ's determination that he is not entitled to CAT relief. Thus, Mendoza has abandoned his CAT claim on appeal, and we need not consider it. See U.S. v. Nealy, 232 F.3d 825, 830-31 (11th Cir. 2000); see also Al Najjar v. Ashcroft,

Mendoza appealed to the BIA.  On May 14, 2002, the BIA summarily affirmed the IJ's decision without an opinion.

## II.  DISCUSSION

On appeal, Mendoza makes several arguments, which we review in turn.[4]

## A.    Appellate Review of Untimely Asylum Application

Mendoza first argues that the IJ erroneously concluded that he was ineligible for asylum due to his untimely application.  INA § 208(a)(2)(B) provides that an alien may not apply for asylum "unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States."  8 U.S.C. § 1158(a)(2)(B).  This one-year filing period commences either on the date of the alien's last arrival

---

257 F.3d 1262, 1283 n.12 (11th Cir. 2001).

[4]The government argues that we should reject Mendoza's brief because it contains no citations to the administrative record, in violation of Fed. R. App. P. 28(a)(9)(A).  That rule requires the argument section of an appellant's brief to contain "the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  Fed. R. App. P. 28(a)(9)(A) (emphasis added).  Failure to comply with Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure may result in waiver or abandonment of issues on appeal.  See, e.g., Flanigan's Enters., Inc. of Ga. v. Fulton County, 242 F.3d 976, 987 n.16 (11th Cir. 2001), cert. denied, 122 S. Ct. 2356 (2002).  However, this requirement is not jurisdictional, but one of prudential constraint.  United States v. Miranda, 248 F.3d 434, 443-44 (5th Cir.), cert denied, 534 U.S. 980 (2001).  Although Mendoza's brief does not cite to the administrative record, he does specify the underlying facts upon which he bases his arguments, and those facts are readily ascertainable in the relatively small record.  While we admonish Mendoza's counsel for failing to comply with Rule 28(a)(9)(A), we exercise our discretion to consider his brief.  Cf. DiCarlo v. Keller Ladders, Inc., 211 F.3d 465, 468 (8th Cir. 2000).

6

in the United States or April 1, 1997, whichever is later.  See 8 C.F.R.

§ 208.4(a)(2)(ii).  Mendoza arrived in the United States in 1994.  He filed his

asylum application on August 24, 1998, and thus, the application was not filed

within one year after April 1, 1997.

An untimely asylum application may be considered if the alien can

demonstrate extraordinary circumstances relating to the delay in filing an

application within the one-year period.  See 8 U.S.C. § 1158(a)(2)(D); see also 8

C.F.R. § 208.4(a)(5) (identifying events that qualify as extraordinary

circumstances).  However, "[n]o court shall have jurisdiction to review any

determination of the Attorney General under [section 1158(a)(2)]."

8 U.S.C. § 1158(a)(3).  This Court already has determined that section 1158(a)(3)

divests our Court of jurisdiction to review a decision regarding whether an alien

complied with the one-year time limit or established extraordinary circumstances

that would excuse his untimely filing.  Fahim v. U. S. Attorney Gen., 278 F.3d

1216, 1217-18 (11th Cir. 2002).  Accordingly, we lack jurisdiction to consider

Mendoza's argument regarding the timeliness of his asylum application.[5]

B.     **Withholding of Removal**

---

[5]We review questions of subject-matter jurisdiction de novo.  See Brooks, 283 F.3d at 1272.

Mendoza next argues that the IJ erred in failing to withhold his removal.[6] The IJ's findings of fact are conclusive unless the record demonstrates that "any reasonable adjudicator would be compelled to conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B). To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it. Fahim, 278 F.3d at 1218 ("To conclude that the Board [of Immigration Appeals] should be reversed, a reviewing Court must find that the record not only supports that conclusion, but compels it.") (quotation marks and citation omitted).

An alien seeking withholding of removal under the INA must show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1231(b)(3)(A). An alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question. See Fahim, 278 F.3d at 1218. The alien's testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." See 8 C.F.R. § 208.16(b). If the alien establishes past persecution in his country based on a protected ground, it is presumed that his life or freedom would be threatened upon return to his country unless the INS shows by a preponderance of the evidence

_____

[6]The IJ's and BIA's legal conclusions are reviewed de novo. See Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001).

8

that, among other things, (1) the country's conditions have changed such that the applicant's life or freedom would no longer be threatened upon his removal; or (2) that the alien could avoid a future threat to his life or freedom by relocating to another part of the proposed country of removal, and it would be reasonable to expect him to do so. See id. § 208.16(b)(1)(i).

An alien who has not shown past persecution, though, may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground in his country. See 8 C.F.R. § 208.16(b)(2). An alien cannot demonstrate that he more-likely-than-not would be persecuted on a protected ground if the IJ finds that the alien could avoid a future threat by relocating to another part of his country. See id.

Upon review of the administrative record and the parties' briefs, we conclude that Mendoza failed to meet the required showing for withholding of removal. The record does not compel reversal of the IJ's finding that Mendoza failed to show he more-likely-than-not would be persecuted on account of, inter alia, membership in a particular social group. Even assuming arguendo that Mendoza's status as the son of an ex-military member, Lopez, places him in a protected social group, he has failed to show past persecution on that ground. The record confirms the IJ's decision that Mendoza's testimony that guerillas burned his father's house and killed his uncle was conclusory; indeed, Mendoza admitted

9

that he did not know, and could only speculate as to, who killed his uncle. Moreover, Lopez's military service ended more than twenty years before the alleged persecution occurred.

Moreover, the record supports the IJ's finding that country conditions have changed in Guatemala since his alleged past persecution. According to the 1997 Profile of Asylum Claims and Country Conditions for Guatemala submitted by the INS, the Guatemalan government signed a peace accord with the guerilla groups, and these groups, including the EGP, have been dissolved by law. The IJ correctly notes that Mendoza failed to show that he would suffer persecution in light of these changed country conditions.

Finally, Mendoza cannot show that he more-likely-than-not would suffer persecution in Guatemala, given that Lopez, the purported focus of the guerillas' persecution, has been able to relocate in Guatemala without harm, and currently lives in the same area from which Mendoza fled. As such, nothing appears to preclude Mendoza from residing in Guatemala without future threats. The record does not support, much less compel, reversal of the IJ's ruling that Mendoza is ineligible for withholding of removal.

## C. BIA's Summary Affirmance Procedure

Mendoza next argues that the BIA's summary affirmance procedures established by the Attorney General in 8 C.F.R. § 3.1(a)(7) violate his due process

10

rights because the BIA issued a one-sentence order without reviewing the facts of his case.[7] As explained below, we agree with the First Circuit's analysis in Albathani v. INS, __ F.3d __ , 2003 WL 257276 (1st Cir. 2003), and conclude that the BIA's summary affirmance procedures did not violate Mendoza's due process rights.

Under these summary affirmance procedures, a single BIA member may affirm an IJ's decision in a single sentence without an opinion if the BIA member determines "that the result was correct and that any errors were harmless and immaterial, and 'that (A) the issue on appeal is squarely controlled by existing . . . precedent . . . ; or (B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted.'" Gonzalez-Oropeza v. U.S. Attorney Gen., __ F.3d __, 2003 WL 356044, at *2 (11th Cir. 2003) (quoting 8 C.F.R. § 3.1(a)(7)(ii)). The result of such an affirmance is that the IJ's decision becomes the final agency determination. Gonzalez-Oropeza, __ F.3d at __, 2003

---

[7]The INS argues that the decision to streamline an immigration appeal by using the summary affirmance procedures is a decision committed to agency discretion and, thus, not subject to review by a court. See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 549 (1978). "'[A]dministrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.'" Gonzalez-Oropeza v. U.S. Attorney Gen., __ F.3d __, 2003 WL 356044, at *2 (11th Cir. 2003) (quoting Vermont Yankee, 435 U.S. at 543). We need not address the INS's contention in this regard, however, because Mendoza does not challenge the INS's decision to streamline his appeal. Rather, Mendoza asserts that the BIA deviated from its own regulations by failing to review the facts of his case.

WL 356044 at *2 (citing 8 C.F.R. § 3.1(a)(7)(iii)). Such an order does not necessarily imply approval of all of the reasoning of the IJ's decision, but does signify that any errors by the IJ were harmless or immaterial. 8 C.F.R. § 3.1(a)(7)(iii). If the BIA member decides that the decision is inappropriate for affirmance without an opinion, the case is assigned to a three-member panel for review and decision; however, that panel also is authorized to determine that a case should be affirmed without an opinion. See id. § 3.1(a)(7)(iv).

In Albathani v. INS, __ F.3d __ , 2003 WL 257276 (1st Cir. 2003), the First Circuit examined the due process implications of the BIA's summary affirmance procedures. The First Circuit stated that there are two possible bases for a due process challenge to the summary affirmance procedures: (1) "that the BIA decision is the final decision [of the INS] and a BIA summary affirmance does not provide a reasoned basis for review;" and (2) "that a one-line summary affirmance provides no way for courts to police the BIA to see that it is actually doing its job according to the regulations it has promulgated." __ F.3d at __, 2003 WL 257276, at *11.

The First Circuit concluded, however, that the BIA's summary affirmance procedure does not violate an alien's due process rights. In determining that appellate courts adequately are able to review INS removal decisions, the First Circuit observed that (1) an alien has no constitutional right to an administrative appeal and (2) Congress has not given aliens any statutory right to an

12

administrative appeal. __ F.3d at __, 2003 WL 257276, at *10 (citing Guentchev v. INS, 77 F.3d 1036, 1037 (7th Cir. 1996). Any administrative appeals rights available to aliens are created by regulations promulgated by the Attorney General, and "under the regulations, no entitlement to a full opinion by the BIA exists." Gonzalez-Oropeza, __ F.3d. at __, 2003 WL 356044, at *2; see also Albathani, __ F.3d. at __, 2003 WL 257276, at *12; 8 C.F.R. § 3.1(b) (2002). Furthermore, meaningful review of the INS's removability determination is not precluded by the brevity of the BIA's summary affirmance decision because an appellate court "will continue to have the IJ's decision and the record upon which it is based available for review." Albathani, __ F.3d. at __, 2003 WL 257276, at *12.

Likewise, we conclude that summary affirmance of Mendoza's removal did not violate any due process rights. As this Court stated in Gonzalez-Oropeza, "under the [INS] regulations, no entitlement to a full opinion by the BIA exists." __ F.3d at __, 2003 WL 356044, at *2. That a one-sentence order was entered is no evidence that the BIA member did not review the facts of Mendoza's case. There also is no evidence that the BIA member who reviewed Mendoza's removal deviated from the requirements of the regulations in determining whether Mendoza's appeal could be subject to the streamlining procedures of 8 C.F.R. § 3.1(a)(7). See also Gonzalez-Oropeza, __ F.3d. at __, 2003 WL 356044, at *1 (concluding that in summarily affirming the IJ's decision, the BIA "was in full

13

compliance with the regulations, as the issues in th[e] case [were] not complex, and [were] governed by existing agency and federal court precedent"). Moreover, our review of the IJ's decision and the administrative record reveals that there is a basis for affirmance and for summary affirmance of Mendoza's removal.[8]

**PETITION DENIED.**

---

[8]We point out that the petitioner in <u>Albathani</u> presented evidence of the significant volume of appeals assigned to each member of the BIA and the large number of appeals a member decided in a single day. Based on this evidence, the petitioner asserted that the BIA was not reviewing IJ decisions in accordance with the regulations. __F.3d at __, 2003 WL 257276, at *12. The First Circuit concluded, however, that neither the petitioner nor the <u>amicus</u> provided any specific evidence of departure from the procedures for review. __ F.3d at __, 2003 WL 257276, at *13. Moreover, the court's own review of the petitioner's case confirmed "that if there were any deviation from what the regulations required . . . the error [was] harmless" because there was a basis for affirmance. <u>Id.</u> In contrast, Mendoza has presented no such evidence.