[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10042
Non-Argument Calendar

_____

BIA No. A95-263-103

SANTIAGO BELLO CLAVIJO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 13, 2007)

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Santiago Bello Clavijo, through counsel, seeks review of the order of the

Board of Immigration Appeals ("BIA") summarily affirming the Immigration Judge's ("IJ") denial of his application for withholding of removal under the Immigration and Nationality Act ("INA") and for relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition.

## I. BACKGROUND

Clavijo is a native and citizen of Colombia. In August 1998, Clavijo's three sisters were murdered in Colombia after they refused to make extortionate payments to the Revolutionary Armed Forces of Colombia ("FARC"). Clavijo began assisting Colombian authorities with the investigation into his sisters' murders.

Two days after the murders, Clavijo's brother received a telephone call from an individual who identified himself as a member of the FARC. The caller threatened to kill Clavijo if he continued to assist with the murder investigation. Clavijo continued to assist the police and continued to receive telephone death threats from the FARC.

During the investigation, police detained four individuals who were "urban guerrillas" of the FARC. The urban guerrillas took orders from the FARC's "jungle guerrillas." The four detainees were tried and, according to Clavijo, two were convicted and two were set free. One of the convicted detainees was Maria Concepcion Ladino Gutierrez, who was the leader of the urban guerrillas. After

2

Gutierrez was convicted, Clavijo began to receive frequent threatening telephone calls in which unidentified callers stated that they would catch Clavijo. Clavijo learned during the investigation that the leader of the "jungle guerrillas," Efrain Diaz-Sanchez, had been involved with his sisters' murders and wanted Clavijo killed because of his involvement in the murder investigation.

In May 2000, a friend told Clavijo that he had overheard a group of men saying that they knew where Clavijo was and that money had been paid to have Clavijo killed. After hearing this information, Clavijo feared for his life and decided to leave Colombia.

Clavijo was admitted to the United States on June 12, 2000, as a nonimmigrant visitor with authorization to remain until December 11, 2000. On March 25, 2002, Clavijo filed an application for asylum, withholding of removal and CAT relief, alleging that he was persecuted by the FARC based on his political opinion. In response to the asylum application, the Department of Homeland Security served Clavijo with a notice to appear, charging him with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa. Clavijo conceded removability.

At his asylum hearing, Clavijo withdrew his application for asylum and proceeded with his application for withholding of removal and CAT relief. The parties stipulated to the facts in Clavijo's application. Clavijo also testified during

3

the hearing consistent with his application.

The government submitted the 2004 United States Department of State Country Report for Colombia. The 2004 Country Report noted that the FARC had committed hundreds of intentional killings and also had kidnapped civilians to help finance subversion and to put political pressure on the government. The 2004 Country Report also explained that the FARC persecutes and assassinates political leaders and government officials.

The IJ denied the application for withholding of removal and for CAT relief. The IJ found Clavijo credible, but concluded that Clavijo was statutorily ineligible for withholding of removal for two reasons. First, noting that Clavijo had not been arrested, detained or harmed directly, the IJ concluded that Clavijo had failed to demonstrate that he had suffered past persecution. Second, the IJ found that the FARC's death threats were motivated by Clavijo's involvement in the investigation into his sisters' murders, rather than by a protected ground. The IJ also concluded that Clavijo had failed to show that he had a well-founded fear of future persecution based on a protected ground. Finally, the IJ concluded that Clavijo was not entitled to CAT relief.

Clavijo appealed to the BIA, which adopted, without opinion, the IJ's decision. Clavijo filed this petition for review.

## II. DISCUSSION

On appeal, Clavijo argues that the IJ erred in concluding that Clavijo failed to demonstrate either past persecution or a well-founded fear of future persecution.[1]  An alien seeking withholding of removal must show that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  In other words, the alien has the burden of proof to show that he "more-likely-than-not" would be persecuted on account of one of the five protected grounds if returned to the country in question.  See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).  To establish eligibility, the alien must show either that he suffered past persecution or that he has a well-founded fear of future persecution.  See 8 C.F.R. § 208.16(b)(1), (2); Mendoza, 327 F.3d at 1287.

Here, the IJ's finding that Clavijo did not suffer past persecution is supported by substantial evidence.  The telephone death threats Clavijo received from the FARC do not rise to the level of persecution.  See Sepulveda v. U.S. Att'y

_____

[1]Where, as here, the BIA summarily affirms the IJ's decision without opinion under 8 C.F.R. § 1003.1(e)(4), the IJ's decision becomes the final agency determination subject to review.  See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003).  We review a factual determination that an alien is statutorily ineligible for withholding of removal under the substantial evidence test.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001).  Under the substantial evidence test, "we must find that the record not only supports reversal, but compels it."  Mendoza, 327 F.3d at 1287.  The fact that evidence in the record may support a conclusion contrary to the administrative findings does not warrant reversal.  Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

5

Gen., 401 F.3d 1226, 1231 (11th Cir. 2005).

Furthermore, substantial evidence supports the IJ's finding that the FARC's death threats were motivated by Clavijo's involvement in the investigation into his sisters' murders, and not by Clavijo's actual or imputed political opinion. Likewise, substantial evidence supports the IJ's finding that any future persecution Clavijo fears also would be on account of Clavijo's involvement in the murder investigation and not on account of his actual or imputed political opinion. See INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S. Ct. 812, 816 (1992) (explaining that an alien's refusal to cooperate with Colombian guerrillas because of the alien's political opinion is not sufficient; the alien must also show that the guerrillas's persecution occurs "because of that political opinion, rather than because of his refusal to [cooperate] with them."); Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (same).

Clavijo presented no evidence that the FARC's interest in him was due to his political opinion. Indeed, Clavijo essentially concedes as much in his counseled appeal brief, arguing that the FARC will kill him if he is returned to Colombia and asking, "what is more important, the compliance with one of the five protected grounds or a human life?" Clavijo did not present evidence that he belonged to a particular political party or that the threatening callers mentioned his political opinion or accused him of being involved in politics. The undisputed evidence

6

shows that Clavijo was targeted by the FARC because he refused to comply with the FARC's demands to stop assisting the Colombian police with their murder investigation.[2] In other words, the death threats resulted from Clavijo's refusal to cooperate with the FARC's efforts to obstruct the murder investigation, not because of any political opinion held by Clavijo.[3] Accordingly, the IJ's finding that Clavijo was not statutorily eligible for withholding of removal is supported by substantial evidence.[4]

**PETITION DENIED.**

---

[2]Notably, the FARC did not kill Clavijo's sisters because of their political opinions, but because they failed to continue making extortionate payments to the FARC. See Rivera v. U.S. Att'y Gen., ___ F.3d ___, No. 06-10209, 2007 WL 1485954, at *6 (May 23, 2007) (concluding that persecution resulting from an alien's refusal to make extortionate payments to the FARC is not persecution "on account of" political opinion).

[3]For the first time on appeal, Clavijo argues that he need not show that he would be singled out by the FARC if he returned to Colombia because there is a pattern and practice of persecution against those who collaborate in criminal investigations against the FARC. We lack jurisdiction to review this claim because Clavijo failed to exhaust it before the BIA. See Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).

[4]On appeal, Clavijo did not raise any argument challenging the denial of CAT relief and, therefore, has abandoned that issue. See Sepulveda, 401 F.3d at 1228 n.2.