[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-13756
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 1, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A98-863-130,
A98-863-131

FRANCISCO MALAVET DELGADO,
OLGA LUCIA ARISTIZABAL BOTERO,
LORENA MALAVET ARISTIZABAL,
PAOLA ANDREA MALAVET ARISTIZABAL,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 1, 2009)

Before TJOFLAT, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Francisco Malavet-Delgado, his wife Olga Lucia Aristizabal-Botero and their two daughters, Lorena Malavet-Arstizabal and Paola Andrea Malavet-Arstizabal, petition for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order dismissing their application for asylum. After review, we deny the petition.

## I. BACKGROUND

### A. Alleged Persecution

On February 26, 2005, Malavet-Delgado, a citizen of Colombia, filed his application for asylum, claiming that he was persecuted by the Revolutionary Armed Forces of Colombia ("FARC") on account of his political opinion and membership in a particular social group.[1] According to his application and hearing testimony, Malavet-Delgado is a lawyer who, from 1987 to 1992, worked for the military in a region where the FARC was influential. From 1993 to 1995, Malavet-Delgado worked as a criminal prosecutor in the state attorney's office in Cali. Some of his cases involved FARC leaders. In 1995, Malavet-Delgado resigned from the state attorney's office when a new attorney general was appointed. From 1995 to 2004, Malavet-Delgado worked as a criminal defense attorney until he left for the United States in 2004.

---

[1]Malavet-Delgado's wife and daughters are listed on his asylum application as derivative beneficiaries. Although our opinion refers to Malavet-Delgado, our holding applies with equal force to his family.

According to Malavet-Delgado, his former supervisor at the state attorney general's office, Felipe Alberto Lopez Soto ("Lopez"), was murdered on January 28, 1996, several months after Lopez resigned from the state attorney's office. Malavet-Delgado did not attend the funeral because he "was afraid that the people who had murdered [Lopez] could be on the lookout for someone like [him] attending . . . ."

Before Lopez died, he introduced Malavet-Delgado to a member of the Unidado Popular Movement ("MPU"), a political organization that supported President Uribe's fight against the FARC. Although Lopez was not a member of the MPU, he sympathized with its cause. In 1998, after Malavet-Delgado resigned from the state attorney's office and Lopez was killed, Malavet-Delgado joined the MPU and started attending meetings in different regions of Colombia.

A year after joining the MPU (i.e., 1999), Malavet-Delgado began receiving threatening phone calls and letters from the FARC stating that he would soon be joining Lopez in the cemetery or that Lopez requested his presence. As a result of these threats, Malavet-Delgado moved with his family from Cali to Bogota.

On May 22, 2001, Malavet-Delgado was leaving the prosecutor's office in Cali when unidentified people on motorcycles fired shots at him. Malavet-Delgado reported the incident to the prosecutor's office. In August 2001, Malavet-Delgado and his family moved to the United States to live.

3

After realizing that he could not practice as an attorney in the United States, Malavet-Delgado returned with his daughters to Colombia, leaving his wife in the United States. In August 2003 and January 2004, Malavet-Delgado traveled to New York for business, both times returning to Colombia. Malavet-Delgado protected his daughters by sending them to a school with lots of security, carrying a weapon and taking them to and from school each day.

Malavet-Delgado did not intend to move to the United States until he received an anonymous letter in the mail in 2004. The note, made of letters cut from magazines and pasted together, stated, "Dr. Malabet we have not forgotten you[.] Your daughters are very beautiful[,] aren't they?" Malavet-Delgado interpreted this as a threat against his daughters and came with them to the United States on February 28, 2004 on non-immigrant pleasure visas with authority to stay until August 27, 2004.

**B.    Immigration Proceedings**

On December 27, 2005, the Department of Homeland Security ("DHS") issued Notices to Appear ("NTA"), alleging that Malavet-Delgado and his daughters had overstayed their visitors visas by remaining in the United States after August 27, 2004 without authorization. Similarly, DHS issued an NTA for Malavet-Delgado's wife, alleging that she had remained in the United States after

4

June 30, 2002 without authorization. Malavet-Delgado appeared before the IJ with counsel and conceded removability.

After a hearing at which Malavet-Delgado testified, the IJ denied Malavet-Delgado's February 26, 2005 application for asylum, withholding of removal and CAT relief and granted his application for voluntary departure. The IJ found that Malavet-Delgado's hearing testimony was not credible and, in the alternative, that Malavet-Delgado did not establish past persecution or a well-founded fear of future persecution.

Malavet-Delgado appealed to the BIA, arguing that the IJ erred in using the new credibility standards in the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3), (d)(4)(C), 119 Stat. 231, 303, 304-05 (codified at 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1229a(c)(4)(C)), which were not applicable to his February 26, 2005 asylum application. The BIA found it unnecessary to address Malavet-Delgado's challenge to the IJ's adverse credibility finding because, even if he was deemed credible, Malavet-Delgado failed to establish his eligibility for asylum or withholding of removal. The BIA concluded that Malavet-Delgado failed to show past persecution because "[t]he alleged events d[id] not rise to the level of persecution." The BIA also concluded that Malavet-Delgado failed to show a well-founded fear of future persecution because the FARC had not shown an interest in him since 2004. The BIA found that Malavet-Delgado was not entitled to CAT

5

relief because he had not shown that it was more likely than not that he would be tortured if he returned to Colombia. Malavet-Delgado petitioned for review.

## II. DISCUSSION

### A. IJ's Adverse Credibility Finding

When the BIA issues a decision, we review only that decision except to the extent the BIA expressly adopts the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA did not adopt the IJ's order and expressly abstained from ruling on the IJ's adverse credibility finding. Thus, we limit our review to the grounds given in the BIA's final order, that is, whether Malavet-Delgado is statutorily eligible for asylum assuming his allegations are true. We review only what the BIA actually ruled on and decline Malavet-Delgado's request to remand with instructions to the BIA to first address his challenge to the IJ's adverse credibility finding before addressing whether he was statutorily ineligible for asylum.[2]

### B. Past Persecution

Malavet-Delgado challenges the BIA's conclusion that, even if his testimony was credible, he nonetheless failed to establish eligibility for asylum based on past

---

[2]As noted earlier, Malavet-Delgado had argued to the BIA that the IJ erred in applying the REAL ID Act's new credibility standards to his case because his asylum application was filed before its enactment. See Pub. L. No. 109-13, § 101(h)(2), 119 Stat. at 305 (providing that the REAL ID Act applies only to applications filed after the date of enactment). The BIA did not address this argument and, instead, accepted Malavet-Delgado's testimony as true.

6

persecution.[3]  "To establish asylum based on past persecution, the applicant must prove (1) that [he] was persecuted, and (2) that the persecution was on account of a protected ground."  Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). Although the INA does not define persecution, this Court has noted that not all "exceptional treatment" constitutes persecution, which is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution."  Sepulveda, 401 F.3d at 1231 (quotation marks and brackets omitted).  Consequently, mere threats, without more, do not rise to the level of persecution.  See id.; see also Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008); Silva, 448 F.3d at 1237.[4]

Here, substantial evidence supports the BIA's determination that Malavet-Delgado failed to show he suffered past persecution.  Malavet-Delgado's claim of past persecution rests on three incidents: (1) in 1999, he received threatening phone calls and letters from the FARC; (2) on May 22, 2001, he was shot at by unknown persons on motorcycles for unknown reasons; and (3) in 2004, he received an

---

[3]Malavet-Delgado does not challenge the BIA's rulings with regard to his asylum claim based on future persecution or his claims for withholding of removal and CAT relief.  Thus, these claims are deemed abandoned.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

[4]We review the BIA's factual determinations regarding whether an applicant is eligible for asylum under the substantial evidence test.  Al Najjar, 257 F.3d at 1283-84.  Under the substantial evidence test, "we must find that the record not only supports reversal, but compels it."  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

7

anonymous note from an unknown person for an unknown reason, tacitly

threatening his daughters' safety. Although the 1999 verbal threats were linked to

the FARC, there is no evidence that the FARC took any further steps. Thus, the

FARC's threats were nothing more than harassment. The record is silent as to the

motives and identities of the perpetrators of the 2001 attempted shooting and the

2004 anonymous note. Thus, there is no evidence that they were connected to

Malavet-Delgado's political activity. On this record, we are not compelled to

conclude that Malavet-Delgado suffered past persecution on account of a

statutorily protected factor.

**PETITION DENIED.**