[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 15, 2010
JOHN LEY
ACTING CLERK

No. 09-11990
Non-Argument Calendar

_____

Agency No. A098-637-502

JAIME EFRAIN POLANCO-BRUN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 15, 2010)

Before EDMONDSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

Jaime Efrain Polanco Brun (Polanco), a native and citizen of Colombia,

seeks review of the Board of Immigration Appeals' decision affirming the Immigration Judge's denial of his application for asylum and withholding of removal, 8 U.S.C. §§ 1158, 1231(b)(3).[1] Polanco left Colombia after receiving several death threats from the militant group FARC in connection with his political activities. We agree with the BIA that he has not shown past persecution or a well-founded fear of future persecution, and we deny his petition.

Polanco, a longtime member of Colombia's Conservative Party, worked for a senator as a political organizer and also helped with President Uribe's election campaign. Early in 2002, FARC sent three written death threats to his home. Polanco initially paid no attention, but began to fear for his life after two further incidents in 2003 and 2004 when FARC guerrillas showed up at two different farms he owned. On each occasion, a truckload of armed men in FARC uniforms drove up and told the foreman they were looking for Polanco and intended to kill him. Polanco was not present at the time, and the men left without incident. No one ever attempted to carry out the threat, or even confronted Polanco in person. Nevertheless, Polanco left the country and entered the United States on a six-month tourist visa in October 2004. In July 2005 Polanco was arrested in Georgia

---

[1] Polanco also sought and was denied relief under the Convention Against Torture, 8 C.F.R. § 208.16(c), but his brief does not address that issue. Therefore, he has abandoned it. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

2

when INS agents, who were looking for one of his roommates, checked his papers and found that his visa had expired. At that point, Polanco announced his intention to apply for political asylum.

The IJ denied Polanco's application both on the merits and on credibility grounds. The BIA disagreed with the credibility finding, but agreed that the threats Polanco described did not rise to the level of persecution necessary to support an asylum claim. We review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Since the BIA did not adopt the IJ's adverse credibility determination, we accept Polanco's testimony as credible and review his claims on their merits. See Mejia, 498 F.3d at 1257.

The meaning of "persecution" for asylum purposes is a question of law that we review de novo. See Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th Cir. 2007). We review factual determinations by the BIA and the IJ under a substantial evidence test, and we will affirm their decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. We may not reverse unless we find that the record "not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

To qualify for asylum, Polanco has the burden of presenting specific and credible evidence showing either (1) past persecution, or (2) a well-founded fear of

3

future persecution, on account of his political opinion. See Mejia, 498 F.3d at 1256; see also 8 C.F.R. § 208.13(a)–(b). Persecution is an "extreme concept," requiring "more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (internal quotation marks omitted). Mere threats generally do not rise to the level of persecution. See Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1237 (11th Cir. 2006) (threatening letter and phone calls were not persecution); Sepulveda, 401 F.3d at 1231 (menacing phone calls to applicant's home and office, and in-person threat to her brother, did not rise to level of persecution).

On the other hand, threats may help support a finding of persecution when they are combined with physical injury. See, e.g., De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1009–10 (11th Cir. 2008) (persecution found where applicant received numerous threats, was dragged from her car, beaten, and kidnapped, and her groundskeeper was tortured and killed); Mejia, 498 F.3d at 1257–58 (persecution found where applicant, who had disregarded threatening graffiti and phone calls, was pulled out of his car by men who struck him with a rifle butt and broke his nose). It is not always necessary that an attack cause physical harm; attempted murder is enough. See Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1233 (11th Cir. 2007) (being shot at is persecution, even if the bullets miss). Nothing of the sort happened in this case, however, and we agree with the BIA and

4

the IJ that the threats Polanco received do not establish past persecution.

Because Polanco has not shown past persecution, he is not presumed to have a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1); De Santamaria, 525 F.3d at 1007. To obtain asylum, Polanco must show that his fear of future persecution based on a protected ground is not only subjectively genuine but also objectively reasonable. See Al Najjar, 257 F.3d at 1289. We take Polanco at his word that he genuinely fears persecution. See De Santamaria, 525 F.3d at 1007 (applicant's credible testimony satisfies subjective prong). To determine whether an applicant's fears are reasonable, the factfinder may consider factors such as the fate of family remaining in the native country and the length of the applicant's absence. See, e.g., Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006) (applicant's fear was not reasonable because his son and parents remained unharmed in the same region of Colombia where he had supposedly been threatened); Sepulveda, 401 F.3d at 1232 (applicant's fear was unreasonable because her student activism was unlikely to be remembered after a four-year absence).

The BIA noted that Polanco has at least one brother still living in Colombia, and–more significantly–that Senator Gallo, the same prominent politician for whom Polanco worked, has not been harmed. Polanco has now been away from Colombia for more than five years. Substantial evidence supports the BIA's and

5

the IJ's conclusion that he has not established a well-founded fear of future persecution.

To be granted withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), Polanco would need to show that it is "more likely than not" that he will be persecuted or tortured on account of a protected ground if he is returned to his native country. Sepulveda, 401 F.3d at 1232. This is a more stringent burden than the "well-founded fear" showing required for asylum. Id. Because Polanco has not met the asylum standard, he cannot qualify for withholding of removal. Id. at 1232–33.

**PETITION DENIED.**