[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11381
Non-Argument Calendar

_____

Agency No. A077-509-649

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 8, 2011
JOHN LEY
CLERK

FLORESHE PERKECI,
ALDO PERKECI,
KRISTJANA PERKECI,
NDUE PERKECI,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 8, 2011)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Petitioner Floreshe Perkeci[1] seeks review of the Board of Immigration Appeals's (BIA's) final order affirming the Immigration Judge's (IJ's) denial of her application for asylum and withholding of removal.[2] After review, we deny Perkeci's petition.

## I.

Perkeci, a citizen of Albania, entered the United States with her family in 1999 without a valid visa. In 2000, she filed an application with the Department of Homeland Security seeking asylum, withholding of removal under the Immigration and Nationality Act (INA), and relief under the United Nations Convention Against Torture (CAT), based on membership in a particular social

---

[1] The applications of Ndue, Kristjana, and Aldo Perkeci, Perkeci's husband and children, are derivative of Perkeci's asylum application. Accordingly, any discussion of Perkeci's claims is also applicable to those of her family members.

[2] The BIA also denied Perkeci's motion to remand her case to the IJ for consideration of new documents, and her application for relief under the Convention Against Torture (CAT). Perkeci does not challenge the denial of her CAT claim at all, and she only mentions the new documents she sought to introduce once, claiming that the BIA "ignored" them. Because Perkeci does not clearly assert these challenges before this court, she has abandoned these claims. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (noting that passing references to issues are insufficient to raise a claim for appeal).

group, religion, and political opinion.[3]  Perkeci alleged that her family had a well-founded fear of persecution in Albania because the family was the target of a "blood feud."  According to Perkeci, in Albanian culture, if a person kills another, the victim's family has the right to kill a male member of the perpetrator's family.

At a hearing before an IJ in 2004, Perkeci testified that her husband and son were at risk of being killed in Albania because of an ongoing blood feud that began in 1940 when a member of a neighboring family, Gjet Ndrecca, killed a member of Perkeci's husband's family.  She testified that in 1997 she and her husband received threats from the Ndrecca family and reported the situation to the police, which did nothing.  She also reported the threats to the Albanian Committee for Reconciliation, which could not persuade the Ndrecca family to agree to a resolution.  The IJ found Perkeci's testimony credible and granted her asylum application, concluding that she had a well-founded fear of future persecution if she returned to Albania because her family constituted a particular social group targeted by the blood feud.

In 2009, the BIA reversed the IJ's decision, concluding that although a "family may, in some contexts, constitute a particular social group" because family

---

[3] Perkeci did not raise religion or political opinion before the IJ or BIA and does not raise them here.  She has therefore abandoned these arguments.  *Sepulveda*, 401 F.3d at 1228 n.2.

membership is an immutable characteristic that indicates a close bond, the Perkeci family did not constitute a particular social group because no evidence indicated that any segment of Albanian society other than the Ndrecca family viewed the Perkeci family as visible or cohesive or sought to harm its members. The BIA remanded the case to an IJ to permit Perkeci to apply for voluntary departure and "any other relief" for which she was eligible.

On remand, Perkeci again asserted asylum, withholding of removal, and CAT claims for relief, arguing that circumstances had changed and that now women and girls were targeted in blood feuds. In an oral decision, the IJ relied on the reasoning in the BIA's 2009 decision and denied Perkeci's applications. Perkeci appealed to the BIA, and the BIA adopted and affirmed the IJ's decision denying Perkeci's application for relief. This petition followed.

## II.

"We review only the [BIA]'s decision, except to the extent that it expressly adopts the IJ's opinion." *Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA expressly adopted the IJ's opinion, so we review the IJ's decision as well. We review the IJ's and the BIA's legal conclusions *de novo* and review factual determinations under the highly deferential substantial evidence test, affirming the decision "if it is supported by reasonable, substantial, and

4

probative evidence on the record considered as a whole." *Id.* at 1283-84. We will only reverse a finding of fact where the record compels it, and not where it merely supports a contrary conclusion. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009).

An asylum applicant must meet the INA's definition of "refugee, 8 U.S.C. § 1158(b)(1), which includes:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). Thus, to meet the definition of "refugee," the applicant must, "with specific and credible evidence, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause future persecution." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (quotation marks omitted).

Further, to receive withholding of removal, an alien "must show that his life or freedom would be threatened on account of" one of the statutory factors. *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003). "An alien bears the burden of demonstrating that he more-likely-than-not would be

persecuted or tortured upon his return to the country in question." *Id.* This standard is more stringent than the well-founded fear standard for asylum; thus, if an applicant is unable to meet the well-founded fear standard he is unable to qualify for withholding of removal. *Najjar*, 257 F.3d at 1292-93.

### III.

We conclude that the record does not compel reversal of the IJ's and BIA's conclusions that Perkeci failed to show a well-founded fear of future persecution on account of her membership in a "particular social group." Whether a group constitutes a "particular social group" under the INA is a question of law, which we review *de novo*, but we also give deference to the BIA's reasonable interpretation of the INA. *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999). We must ask whether the INA "is silent or ambiguous with respect to the specific issue" at hand and, if so, we must determine "whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

The INA is silent as to whether a family targeted by a blood feud may constitute a "particular social group" eligible for relief. Thus, we must determine whether the BIA reasonably construed the INA to conclude that the Perkeci

6

family, as targets of a blood feud, did not constitute a "particular social group." *Chevron*, 467 U.S. at 843. We hold that the BIA's construction was reasonable.

In *Castillo-Arias v. United States Attorney General*, 446 F.3d 1190, 1196-97 (11th Cir. 2006), we adopted the BIA's formulation of "particular social group" set forth in *Matter of Acosta*, 19 I. & N. Dec. 211 (B.I.A. 1985). *Acosta*, as construed by *Castillo-Arias*, mandates two considerations in determining whether a group constitutes a "particular social group": immutability and social visibility among the country's society at large. *Castillo-Arias*, 446 F.3d at 1194, 1197-98. We emphasized that the category "should not be a 'catch all' for all persons alleging persecution who do not fit elsewhere," noting that the intent of Congress was not to permit individuals to obtain relief "by defining their own 'particular social group.'" *Id.* at 1198.

The BIA's decision in this case is a reasonable application of the principles set out in *Acosta* and *Castillo-Arias*. The BIA found that there was no evidence showing that the Perkeci family, as targets of a blood feud, were sufficiently visible to Albanian society as a whole to constitute a "particular social group" under the INA. The BIA also emphasized that recognizing the Perkeci family as a particular social group "would be tantamount to defining the group by the instance of harm that is inflicted against it," reflecting the same concerns articulated in

7

*Castillo-Arias*. Because the BIA applied the principles set forth in *Castillo-Arias*

and *Acosta*, we find that the board's construction of the INA was permissible.

Accordingly, we deny Perkeci's petition.

PETITION DENIED.