[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12350
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 7, 2010
JOHN LEY
ACTING CLERK

Agency No. A099-538-293

NICHOLSON AUPONT,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 7, 2010)

Before BLACK, CARNES and FAY, Circuit Judges.

PER CURIAM:

Nicholson Aupont, a native and citizen of Haiti, seeks review of the Board

of Immigration Appeals' decision, affirming the Immigration Judge's denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture, and other Cruel, Inhuman, and Degrading Treatment or Punishment. Aupont contends that the IJ and BIA erred by concluding that he was not credible. He argues that his testimony, when considered along with the evidence in the record, establishes that he is entitled to withholding of removal and CAT relief.[1]

"We review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA did not expressly adopt the IJ's opinion, so we review only the BIA's decision. See id. at 1283. We apply the "substantial evidence test" to the BIA's findings of fact, including its credibility determinations. Kueviakoe v. United States Att'y Gen., 567 F.3d 1301, 1304 (11th Cir. 2009). We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (quotation marks omitted). That standard is "highly deferential." Id. The BIA's

---

[1] The BIA and the IJ denied Aupont's claim for asylum because his application was untimely and he failed to satisfy the requirements for any exception to the one-year filing deadline. We lack jurisdiction to review those findings. Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) ("[S]ection 1158(a)(3) divests our Court of jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing.").

findings of fact "may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

The government contends that we lack jurisdiction to consider the BIA's credibility determination because Aupont failed to challenge the IJ's adverse credibility determination in his notice of appeal or brief to the BIA. That is wrong. In his notice of appeal to the BIA, Aupont asserted: "I provided testimony which was believable, consistent and sufficiently detailed to provide a plausible and coherent account of the basis or [sic] my fears." The BIA reviewed the IJ's credibility findings. It expressly refused to adopt or affirm the IJ's finding that Aupont's testimony was not credible on two particular points: the number of siblings that Aupont has in Haiti and whether a sworn statement made to corroborate his persecution claim was prepared by his mother or his father. In all other respects, however, the BIA found that the IJ's adverse credibility determination was not clearly erroneous.

Aupont stated in his asylum application and testified before the IJ that he was a member of a political group in Haiti called Organisation du Peuple en Lutte (OPL). He testified that he was a regional coordinator, and he "motivate[d] people to join the party." His application for asylum stated that he worked as a security

3

guard for the City Hall of Port-au-Prince and was "a gun carrying member of the largest opposition party in Haiti." He testified that as a result of his OPL activities he was threatened by the chimere of Lavalas. According to Aupont's testimony, four chimere of Lavalas attacked him on December 15, 2005, when he was on his way to work. Aupont's asylum application, however, did not mention the December 15 incident, and Aupont offered no police report to corroborate his testimony. He testified on cross-examination that he did not refer to the December 15 attack in his application because he had no documentation to corroborate it.

Aupont did state in his application that on December 19, 2005, "a group of armed individuals who clearly intended to do [him] harm" invaded his family's home. Aupont escaped, but the intruders ransacked the house and raped his sister. The record contains evidence that: Aupont was a member of OPL; unidentified, armed people raided his house; and his sister was raped. Nothing in the record, however, compels the conclusion that the assailants were Aupont's political opponents or that the attack was related to a protected ground. His asylum application does not identify the "group of armed individuals who clearly intended to do [him] harm" and does not assert that they were persecuting him on account of his political opinion. The record contains his mother's sworn statement "that her house had been the object of an act of vandalism caused by a group of unidentified individuals" on the night of December 19, 2005. The affidavit states that "a group

4

of armed individuals" broke into the family's home and asked for Aupont, who escaped by way of the back door. The affidavit does not identify the intruders and does not indicate that their actions were on account of Aupont's political opinion. Aupont "fail[ed] to demonstrate a clear probability of persecution" on account of a protected ground. Rodriguez Morales v. United States Att'y Gen., 488 F.3d 884, 891 (11th Cir. 2007). Therefore, he failed to establish that he is entitled to withholding of removal. See id., see also 8 U.S.C. § 1231(b)(3).

The BIA's adverse credibility determination also undermines the uncorroborated testimony on which Aupont's CAT claim relies: that the police refused to assist him after the alleged December 15 assault, which he did not mention in his asylum application. Other than his own allegations, he has not provided any evidence to establish that the police were aware that he was being tortured and that they breached their duty to intervene. See Rodriguez Morales, 488 F.3d at 891 (explaining that "to qualify for CAT relief, an alien must demonstrate a likelihood that he will be tortured at the 'acquiescence' of the government, meaning that the government was aware of the torture, yet breached its responsibility to intervene"). The record does not compel the conclusion that Aupont qualifies for CAT relief.

**PETITION DENIED.**

5