[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11983
Non-Argument Calendar
_____

Agency No. A088-399-203


IBRAT ILHAMOVICH DJABBAROV,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 22, 2015)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Ibrat Ilhamovich Djabbarov, a native and citizen of Uzbekistan, seeks review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his claims for asylum and withholding of removal, and relief under the United Nations Convention Against Torture ("CAT").  After review, we deny Djabbarov's petition for review.[1]

## I.  BACKGROUND

In March 2007, while in the United States on a visitor's visa, Djabbarov filed an asylum application, claiming the Uzbekistani government had persecuted him because it believed Djabbarov was affiliated with Hizb-ut Tahrir, a radical political group that advocates for an Islamic government in Uzbekistan.  Djabbarov claimed that between October 2004 and January 2006, government officials arrested and interrogated him three times, that he had to pay bribes to secure his release, and that, during his first arrest, he was beaten until he was unconscious. Djabbarov also claimed that his father was shot and killed when he and Djabbarov attended a political street protest in May 2005, and the Uzbekistani military fired on the protestors.

In May 2008, the Department of Homeland Security issued a Notice to Appear ("NTA") charging Djabbarov with removability because his visitor visa

---

[1]Djabbarov failed to raise any argument concerning the denial of his future persecution claim (independent of his past persecution claim) or the denial of CAT relief, and thus he abandoned these claims.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

had expired.  Djabbarov admitted the NTA's allegations and conceded that he is removable.

After a hearing, the IJ discredited Djabbarov based on numerous inconsistencies between Djabbarov's hearing testimony and other record evidence and denied all requested relief.  The BIA affirmed the IJ's adverse credibility finding and dismissed Djabbarov's appeal.  In seeking review before this Court, Djabbarov argues that the IJ's credibility finding is not supported by specific, cogent reasons or substantial evidence.[2]

## II.  DISCUSSION

An asylum applicant must show, with specific and credible evidence, either past persecution or a well-founded fear of future persecution on account of a protected ground.  Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005); 8 C.F.R. § 208.13(b).[3]  While credible testimony may be sufficient to sustain an asylum applicant's burden of proof without corroboration, Immigration and Nationality Act ("INA") § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii), the weaker an applicant's testimony, the greater the need for corroboration.  Yang v.

---

[2]Because the BIA agreed with the IJ's credibility finding, we review the decisions of both the IJ and the BIA.  Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1344 (11th Cir. 2008).  The IJ's credibility determination is a factual finding, which we review for substantial evidence.  Id. Under the substantial evidence test, we will reverse the IJ's credibility determination only if the record compels it.  Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005).

[3]Similarly, an applicant for withholding of removal must show that it was more likely than not that she will be persecuted on a protected ground.  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); 8 C.F.R. § 208.16(b).

U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).  Conversely, an IJ's adverse credibility determination, alone, may support the denial of an asylum claim, but if the applicant produces evidence other than his testimony, the IJ and the BIA must consider this evidence as well.  Forgue, 401 F.3d at 1287.

Pursuant to the REAL ID Act, the IJ, in evaluating credibility, must consider the "totality of the circumstances," including: (1) the applicant's demeanor, candor, or responsiveness; (2) the inherent plausibility of the applicant's account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; (5) the consistency of the statements with other record evidence; and (6) any other relevant factor.  INA § 208(b)(1)(B)(iii); 8 U.S.C. § 1158(b)(1)(B)(iii); see also Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006).[4]  Furthermore, any inaccuracy, inconsistency, or falsehood may be used to support an adverse credibility determination, regardless of whether it goes to the heart of the applicant's claim.  INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii).  In making an adverse credibility finding, the IJ must be explicit and offer "specific, cogent reasons" for the finding.  Forgue, 401 F.3d at 1287.  "Once an adverse credibility finding is made, the burden is on the applicant

---

[4]The IJ's credibility findings for purposes of determining eligibility for withholding of removal are also governed by 8 U.S.C. § 1158(b)(1)(B), as amended by the REAL ID Act.  INA § 241(b)(3)(C), 8 U.S.C. § 1231(b)(3)(C).

alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Id.

Here, contrary to Djabbarov's contentions, the IJ offered specific, cogent reasons for his adverse credibility finding. In particular, the IJ noted discrepancies between Djabbarov's testimony and the evidence of record concerning: (1) Djabbarov's birthplace; (2) his 2004 arrest; (3) the details of how he secured a visa; (4) the financing of his mother's new apartment after fleeing to Tashkent; and (5) the government's closing of his family's business.

Further, the IJ's credibility finding is supported by substantial evidence. For example, while Djabbarov insists he was born in Andijan, his passport and visa paperwork list his place of birth as Tashkent. There are also multiple inconsistencies concerning Djabbarov's October 2004 arrest. Although Djabbarov attributed his injuries to the actions of the Uzbekistani authorities, the hospital report he submitted as corroboration states that he sustained his injuries after being beaten in the street by unidentified individuals in October 2005. In addition, Djabbarov initially stated that his handcuffs were removed before the beating began, but later testified that officials placed him in handcuffs just prior to the beating. And, Djabbarov's initial statement suggests he was detained for a single day, while he subsequently testified that the detention lasted two days.

5

There are also discrepancies regarding where and for how long his mother resided in Tashkent after Djabbarov's arrests.  Initially, Djabbarov indicated that his mother refused to leave Andijan because she was waiting for her husband to return.  Later, however, Djabbarov testified that his mother accompanied him to Tashkent following his 2006 arrest.  Djabbarov also testified that his mother could afford her new apartment in Tashkent because he sent her money, but a friend, Murod Rasulov, claimed that he purchased the apartment for her.

Djabbarov was also inconsistent in recounting his father's death.  Initially, Djabbarov stated that, when his father fell to the ground, Djabbarov did not know his father had been shot until he turned him over.  Djabbarov could not lift his father and had to flee.  The next day, Djabbarov and his mother searched for his father among the wounded at hospitals, but did not find him.  At the hearing, however, Djabbarov testified that he knew immediately that his father was dead upon seeing him on the ground, and searched for his father's body the next day.  But, the details changed again on cross-examination when Djabbarov said that, when his father was shot, he did not know in that moment whether his father was dead.

Given the numerous inconsistencies between Djabbarov's testimony and the other record evidence, the record does not compel a conclusion that Djabbarov testified credibly.  Although Djabbarov argues that he provided plausible

explanations for several identified inconsistencies, the IJ did not accept them.  In any event, a tenable explanation does not compel us to overturn the IJ's credibility determination.  See Chen, 463 F.3d at 1233 (explaining that a petitioner's explanations, although tenable, did not compel reversal of the IJ's credibility finding); see also Lyashchynska v. U.S. Att'y Gen., 676 F.3d 962, 967 (11th Cir. 2012) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quotation marks omitted)).

Djabbarov's argument that the IJ placed disproportionate weight on the discrepancies surrounding his place of birth lacks merit.  First, the IJ relied upon a number of inconsistencies, only one of which was about his birthplace.  Second, as the REAL ID Act clarified, any inconsistency may be used to support an adverse credibility determination, regardless of whether it goes to the heart of the asylum applicant's claim or involves a minor detail.  Finally, the IJ did not rely solely on the identified inconsistencies, but rather also noted that most of Djabbarov's corroborating evidence—mainly sworn statements from friends and relatives in Uzbekistan—was either lacking in detail or completely devoid of any mention of the harm Djabbarov claimed to have suffered.

The reasons given for discrediting Djabbarov are supported by substantial evidence, and Djabbarov does not contend that the other evidence in the record,

absent his discredited testimony, compels a conclusion that he was persecuted.[5]

Because Djabbarov did not establish eligibility for asylum, his claim for

withholding of removal also fails.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1292-

93 (11th Cir. 2001).

**PETITION DENIED.**

---

[5]Because the IJ's adverse credibility determination is supported by substantial evidence, we do not address the IJ's alternate finding that, even if Djabbarov's testimony is taken as true, he failed to establish past persecution or a well-founded fear of future persecution.